## HORACE WARREN *et al.*

*v.*

## MARTHA J. RICHMOND.

1. FORFEITURE OF CONTRACT—*in what manner it may be declared.* Where a vendor of land has a right, by the terms of the contract, to declare a forfeiture in case the purchaser fails to comply on his part, where he holds no securities of a negotiable character, he has only clearly to manifest an intention to end the contract, and, by selling the property to another, he does, in the most unequivocal manner, make his declaration of forfeiture.

2. SPECIFIC PERFORMANCE—*when granted.* A purchaser of land will not be entitled to a decree for a specific performance, unless he shows a performance on his part of all the conditions precedent to his right to demand a conveyance.

3. NOTICE—*by possession.* Where a purchaser of land is in possession, such possession will operate as constructive notice to a subsequent purchaser from the same vendor, of the right of the party in possession.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion states the case.

Messrs. BUELL & ADAMS, for the appellants.

Messrs. BLANCHARD & MILLARD, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in chancery, filed by appellee, in the Superior Court of Chicago, against appellants, for a specific performance of a contract alleged to have been made by Warren, for the conveyance of the real estate described in the bill. Warren, it appears, after he entered into the contract, conveyed the premises to Anna B. Hawks, and took a mortgage on the premises to secure the payment of a balance of the purchase money. Appellants severally answered the bill, replications were filed, and the cause was heard at the June term, 1869, of the court, when a decree was rendered, granting the relief sought by the bill, as to a portion of the premises, but the bill was dismissed as to the remainder.

Complainant insists that she is entitled to relief, under a written agreement, of the first of July, 1865, by which Warren agreed to convey forty-three feet off the west side of lot one, block three, Ellis' addition to Chicago, and she agreed to pay the sum of two hundred and eighty dollars, with interest, annually, at six per cent.; one hundred and forty dollars of that sum, with interest, payable on the first of June, 1866, and the remaining one hundred and forty dollars and interest, on the first of June, 1867, and that she would pay all taxes and assessments legally imposed. The time of payment is made essential to the agreement, and it provides for a forfeiture for non-payment at the times specified, and for a re-entry. This agreement was not recorded, and at the filing of the bill was in Warren's possession.

Two questions present themselves for determination; first, whether complainant has performed her part of the contract; or secondly, whether, if she has not, she has shown a sufficient excuse for non-performance to entitle her to the relief prayed in her bill, several years after it was entered into and after the time for carrying the contract into effect had expired. The fact that Warren is found to have possession of the agreement, is strong evidence that the contract had been abandoned and canceled by the parties.

Complainant and her husband attempt to explain this by saying, that the agreement was given to Warren that he might execute a deed for the lot to complainant, but he denies this, and says that when Richmond failed to make the cash payment, he surrendered the contract and agreed to pay rent for the house.

After the sale was made, Warren gave to appellee a receipt for $150, on the purchase of the lot, and in it stated that the balance due on the lot was $280, and that one half was to be paid in one year from date and the balance in two years. This receipt bore date the eighteenth of July, 1865. Warren swears that for the payment of the $150 named in the receipt, Richmond gave him a note on Mackway to collect and retain that amount, and apply the remainder on the indebtedness; that he was unable to collect anything on the note and returned it. Richmond denies he ever had the note. And he, appellee, their daughter and Dr. Jones all swear to the payment of the money at the time the contract or the receipt was given, and they testify positively and unequivocally to its payment. The only means of reconciling the evidence in reference to the payment of the money is, that Richmond swears he frequently gave money to Warren with which to purchase goods in the city, for him, to supply his sutler's store at Camp Douglas, but even if we should conclude that this $150 was given to Warren for that purpose, we are at a loss to know why the receipt was given. That remains unexplained.

We now come to the question of performance by appellee. The agreement made time of the essence of the contract, and on a failure to comply by appellee, Warren, by its terms, had the right to declare it forfeited and to retain any money already paid. And to declare a forfeiture under this agreement, as he held no obligations or securities of a negotiable character, he only was required to clearly and unmistakably manifest the intention to end the contract; and by selling the property to another he did so in the most unequivocal

manner. But it remains to ascertain whether there was such a default on the part of appellee as warranted that course by him. If Warren had been paid the purchase money, then he had no such right, and as appellee was in the actual possession, Anna B. Hawks purchased with constructive notice of appellee's rights and cannot disregard them.

We fail to find any evidence in this record that the balance of the purchase money was paid by appellee or her husband. Richmond swears that Warren was indebted to him, while the latter swears the former owed him. Richmond claims to have furnished the materials and paid for the labor in constructing the house, and Warren claims that he built and paid for it. Warren proved by witnesses that he paid them for labor and materials, and Richmond introduced like evidence. On this question there is a contrariety of evidence that leaves that branch of the case in very great uncertainty as to the true state of the facts. They seem to have been connected in business in some manner for a considerable period of time, and to have done business very loosely, and the probability is that neither knew the state of their accounts. But be that as it may, appellee has not proved, as she was bound to do, before she could obtain the relief asked, that she had made all the payments according to her agreement, or such an excuse as would justify her failure to comply, if time was not of the essence of the contract.

It is, however, urged, that the receipt of the eighth of July, 1865, superceded the written agreement, and time is not essential by its terms. A complete answer to this is, that the original agreement was canceled and abandoned by the parties. The evidence disclosed by the record is too contradictory and uncertain upon which to decree a specific performance. A number of witnesses testify that appellee, on different occasions, said they were renting of Warren. She, at different times, as did her husband, when workmen wanted materials for the building, referred them to Warren. Nor did she claim the property when Sawyer first called with Miss Hawks after her

56     WARREN *et al. v.* RICHMOND.     [Sept. T.;

Opinion of the Court.

purchase, and when appellee informed them her husband had a claim, and being asked as to its nature, she referred them to him. At Sawyer's next interview he spoke of repairing the house and proposed to rent to her, and she inquired the amount asked, and on being informed, she said the repairs would place the house in good order, and that if she and her husband did not rent, others would.

Again, it appears that Warren insured the house, and paid the taxes after the sale. It is true, there is some evidence tending to prove that a portion of the taxes was refunded by Richmond. And the evidence clearly shows that Warren employed workmen to build the house, and that he paid very much the larger portion of the cost of its construction. These declarations of appellee are not those of an owner, or one holding in his own right, nor are the acts and declarations of Warren those of a stranger to the title, or a vendor of real property, even under a contract of sale. From all the evidence in the case it would seem that Warren had sold the property, but that by some subsequent arrangement the contract had been mutually abandoned. It is only upon this theory that the acts and declarations of the parties can be reconciled.

What we have said in reference to the lot purchased and for the conveyance of which the agreement was executed, will apply to the few adjoining feet claimed to have been purchased by a verbal contract, and its discussion is deemed unnecessary.

A careful examination of the evidence in this record satisfies us that it is too vague and indefinite, upon which to base a decree of specific performance, and the decree of the court below must be reversed and the cause remanded.

*Decree reversed.*