[No. 4745.   Decided February 4, 1905.]

MORAN & COMPANY, *Respondent*, v. PERCY H. PALMER
et al., *Appellants*.[1]

VENDOR AND PURCHASER—AGREEMENT TO SELL LAND—NON-PAY-
MENT OF PRICE—FORFEITURE—NOTICE.   Where a purchaser of lots
goes into possession and makes improvements under an agree-
ment to pay a certain price within a specified time, but fails to
make any payment for more than a year and a half after the
same is due, the recording of a deed by the vendor to another
purchaser is constructive notice that a forfeiture has been de-
clared.

SAME—ACQUIESCENCE IN FORFEITURE.   In such a case, where
the purchaser makes no offer to pay for several years,  but
states that he will buy the property when he can get it at a
satisfactory price, he acquiesces in the forfeiture of the con-
tract.

QUIETING TITLE—POSSESSION OF PREMISES—STIPULATION AS TO
TENANT.   An action to quiet title to premises which are in the
possession of a tenant under lease from both parties, should not
be dismissed because the plaintiff is not in possession, where
a stipulation was entered into between the parties that the ten-
ant should pay no rent until the termination of the action, and
should then pay to the prevailing party, since thereby the ques-
tion of possession is treated as immaterial.

Appeal from a judgment of the superior court for Sno-
homish county, Denney, J., entered February 28, 1903,
upon findings in favor of the plaintiff, after a trial on the
merits before the court without a jury, in an action to
quiet title.   Affirmed.

*Cooley & Horan*, for appellants.

*Brownell & Coleman* and *L. N. Jones*, for respondents.

HADLEY, J.—Respondent, a corporation, brought this
suit against appellants to quiet title to certain real estate

[1]Reported in 79 Pac. 476.

in Arlington, Snohomish county. The complaint alleges ownership in respondent, and that appellants also claim to be the owners. The defendant Arthur B. Palmer separately answered the complaint, his co-defendants disclaiming any interest in the property. He avers, that, in 1890, he entered into a contract with one McLeod, the then owner of the property, for the purchase of the south twenty-three feet of lot 19 in block 6, as shown upon the plat of the town of Arlington; that he agreed to pay therefor the sum of $150, and to improve the property by erecting a building thereon; that he immediately entered into possession, erected the building, and in all things complied with his contract; and that he has ever since been the owner in fee of said twenty-three feet. He also alleges that said McLeod and subsequent grantees of record of said property, including respondent, had full notice of his title to the property. The cause was tried before the court without a jury, and decree was entered, declaring respondent to be the owner, as against the defendants. From the judgment this appeal was taken.

The court found that a contract, for the sale of said twenty-three feet, was made by said McLeod with appellant Arthur D. Palmer, provided the latter should immediately erect thereon a frame building, and should, on or before March 31, 1891, pay to the former the sum of $150 cash. It is further stated in the findings that said Palmer claims that the contract was in writing, while McLeod testified that it was verbal, and that the court makes no finding upon that subject, as it is admitted by Palmer that, if the contract was in writing, it was never recorded in the office of the auditor of Snohomish county, and that it is now a lost instrument.

It was further found that said Palmer, with the consent

of McLeod, went into possession of the premises, and, in the summer of 1890, erected thereon a frame building; that Palmer never paid to McLeod, or his successors in interest, the said $150, or any part thereof; that in August, 1891, and after the expiration of the time for payment of said money under the contract, McLeod duly sold, and by deed conveyed, the property to one Magnesen, which deed was filed for record on November 25, 1892; that said Magnesen acquired the property without notice or knowledge of any claim thereto by Palmer, and that he continued to be the owner until September 4, 1900; that one Jones occupied the building as a tenant, and continued to pay rent to Palmer until 1896, when demand was made upon him by Magnesen, through his agents, for ground rent; that soon thereafter Jones ceased paying rent to any one, he being in a state of uncertainty as to who was properly entitled to it; that in September, 1900, Magnesen sold and conveyed the property to one Hanson, and that in October, 1901, the latter sold and conveyed it to respondent; that Magnesen, Hanson and respondent have paid all taxes upon the premises since 1891, and no part thereof has been paid by Palmer; that respondent, in acquiring the premises, had no notice whatever, either actual or constructive, that Palmer claimed any interest in the fee to said lot, but did have notice that he claimed to have some interest in the building thereon; that, after the purchase of the premises by Hanson, the tenant, Jones, moved out of the building, and it was then occupied by the Arlington Drug Company as a drug store; that the drug company leased the premises both from respondent and from Palmer, under an agreement that the drug company was not to pay rent to any one until the final termination of this action, and that it should then

pay all rent to the one pervailing in the suit; that said drug company entered into a written lease with respondent for the property, and is respondent's tenant in possession.

Exceptions to certain of the foregoing findings are urged, but we think they are sufficiently sustained by evidence, and we shall not disturb them. Under the facts found, we think the contract for sale between McLeod and Palmer was terminated, and that the latter is, therefore, without interest in the land. It does not appear whether, under the terms of the contract, time of payment was of the essence of the agreement or not; but it does appear that on November 25, 1892, more than a year and a half after the money was to be paid, the deed of McLeod, conveying the property to Magnesen, was placed of record, and it then became constructive notice to Palmer that McLeod had terminated the agreement. It has been held that any reasonable notice that a forfeiture has been declared is sufficient.

"A forfeiture of a contract for the sale of land may be declared by a reasonable notice of the intention so to do, if a strict performance be not made; . . . In many instances overt acts manifesting intention have been held equivalent to notice; as where on the vendee's non-compliance the vendor, where he holds no securities of a negotiable character, sells the property to another, this has been taken as a clear manifestation of an intention to end the contract, and is held to be an unequivocal declaration of forfeiture." 2 Warvelle, Vendors (1st ed.), p. 823, § 7.

In support of the above, the case of *Warren v. Richmond*, 53 Ill. 52, is cited. The case is directly in point here. The court said:

"And to declare a forfeiture under this agreement, as he held no obligations or securities of a negotiable char-

acter, he only was required to clearly and unmistakably manifest the intention to end the contract; and by selling the property to another he did so in the most unequivocal manner."

The recording of the deed from McLeod to Magnesen was, therefore, of itself, at least some notice to Palmer that McLeod had terminated the contract. If, however, the record of the deed, a year and a half after the money should have been paid, was not, of itself, sufficient notice to Palmer of the termination of the contract, still we think his subsequent attitude, under certain testimony in the case, was such that he must be held to have confirmed the cancellation of the agreement, and to have accepted it as an accomplished fact, and that he cannot now be heard to say the contract was not terminated. In 1896 McLeod, as agent for Magnesen, made a demand upon the tenant Jones for rent. A brother of said Jones, who is an attorney, testified that he then went to Palmer, and asked him why he did not "fix the matter up," and further testified: "He said he would, as soon as he could buy it cheap enough. He could buy it cheaper after awhile. He said he would find an opportunity to buy it cheaper." And, again, the witness testified that Palmer said: "I will go up there and buy that from the old man cheap some day." From the above testimony, it is apparent that Palmer had actual notice, as long ago as 1896, that Magnesen claimed the property, and, with that knowledge and with the latter's deed upon record, he must be held to have had sufficient notice that the contract was terminated. It is also apparent that he acquiesced in the termination of the contract. He assumed the attitude of trying to buy the property when he could get it at a satisfactory price. It is true, the truth of the above testimony, so far as it relates to what Palmer said, is not admitted, but it is in

support of the judgment, and the trial court doubtless believed it, and was influenced by it in his decision. Such conduct on the part of Palmer, and his continued neglect to pay, or offer to pay, the money, we think showed an acquiescence in the repudiation of the contract by McLeod.

"While a mere failure to pay on the day fixed will not work a forfeiture when time is not made the essence of the contract, and rigid forfeitures will never be encouraged where the delay in payment does not arise out of a desire to repudiate the contract or procrastinate payment, yet if a vendee intends to hold the contract as subsisting he must take reasonable steps to evidence his intention; and where he neglects to tender payments when due, or otherwise to perform or offer to perform agreeably to the stipulations of the contract, if the contract has been declared forfeited by the vendor, unless he can show that his failure was the result of fraud, accident or mistake, he will be presumed to have acquiesced in such repudiation of the contract by the vendor." 2 Warvelle, Vendors (1st ed.), p. 829, § 13.

The point is made by appellants that respondent can not maintain this suit, for the alleged reason that he is not in possession of the property. We think this contention cannot prevail, because of the agreement between the parties to allow the payment of rent to be suspended pending the result of this suit, and that it shall be paid to the prevailing party. The agreement, in effect, is a stipulation that the question as to who is in actual possession shall be treated as immaterial in the controversy. Moreover, the court found that the tenant in possession accepted a written lease from respondent, and its possession as tenant of respondent is the latter's possession.

The judgment is affirmed.

MOUNT, C. J., and FULLERTON and DUNBAR, JJ., concur.