[No. 6952. Decided October 28, 1907.]

CHARLES NEESON, *Appellant*, v. JAMES SMITH *et al.*, *Respondents.*[1]

MORTGAGES—DEED AS MORTGAGE—CONTRACT TO RECONVEY—VENDOR AND PURCHASER—OPTIONS—CONDITIONAL SALE. Where a mortgagor deeds the mortgaged property to the mortgagee, who surrendered the notes, cancelled the mortgage, took possession of the property, giving back an agreement to reconvey to the mortgagor for a certain sum at any time within two years, leaving it optional with the mortgagor to repurchase the same, the deed is absolute and not a mortgage, as the relation of debtor and creditor ceases to exist; and the agreement to convey is an option that expires at the time fixed, and not a conditional sale, although alluded to as such, and time was not made of its essence.

VENDOR AND PURCHASER—CONDITIONAL SALE—FORFEITURE—ACQUIESCENCE IN. After the time for completing a conditional sale had expired, a sale to a third person, not objected to for five years, constitutes a forfeiture of the conditional sale, acquiesced in by the purchaser.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered March 8, 1907, in favor of the defendants, after a trial on the merits before the court without a jury, in an action for specific performance, and for damages. Affirmed.

[1]Reported in 92 Pac. 131.

*W. H. Abel* (*Chas. W. Smith*, of counsel), for appellant.

*J. A. Hutcheson, C. W. Hodgdon*, and *J. B. Bridges*, for respondents.

Crow, J.—This action was commenced by Charles Neeson against James Smith and Mary A. Smith, his wife, Lytle Logging & Mercantile Company, a corporation, and others, for specific performance and damages. The evidence shows that the plaintiff, Neeson, from January 19, 1891, to December 4, 1896, inclusive, executed and delivered to the defendant James Smith five promissory notes, for a total of $9,400, secured by mortgages on four different tracts of real estate, in Chehalis county, which we will severally designate as, the Montesano lots, the Chehalis River timber land, the Hoquiam River timber land, and the Cosmopolis land.

In July and August, 1898, Smith commenced foreclosure on all of the mortgages; but before answer, and on August 13, 1898, he and Neeson entered into a written contract of settlement, whereby it was stipulated that the amount then due Smith was $8,274; that Neeson should convey all the lands to Smith, who should cancel and surrender all the notes and mortgages; that Neeson should, at his election, have two years within which to repurchase any or all of the lands, upon payment of the agreed valuations hereinafter stated, with eight per cent interest thereon; and that, upon the execution of the deed by Neeson, the defendants Smith and wife should execute and deliver to Neeson an agreement to reconvey the lands, or any of them, upon such payments being made. Thereupon the plaintiff executed and delivered to the defendant James Smith a warranty deed for all of the lands; and the defendants Smith and wife, under date of August 13, 1898, executed and delivered to the plaintiff Neeson a written contract, acknowledged on October 5, 1898, reading, without descriptions, as follows:

"This Agreement, made this 13th day of August, 1898, by and between James Smith and Mary A. Smith, his wife,

parties of the first part, and Charles Neeson, party of the second part, all of Montesano, in Chehalis county, state of Washington.

"Witnesseth—That first parties for and in consideration of the sum of one dollar in hand paid by the second party, receipt of which is hereby acknowledged, and other valuable considerations, moving from second party to first parties, do by these presents for themselves, their heirs, representatives and assigns, covenant and agree to sell and convey to second party his heirs or assigns, by good and sufficient warranty deed or deeds, with the usual covenants at any time on or before two years from this date, to-wit, the 13 day of August, 1898, any or all of the following described tracts of land, situated in Chehalis county in the state of Washington, at the election or elections of second party, for the respective sums of money herein specified, payable in cash at the date each purchase is completed, on or before two years from this date, as follows, to wit: They covenant and agree to sell and convey, as aforesaid, [the Montesano lots] ; with the buildings now thereon unless destroyed by fire, for the sum of nine hundred dollars ($900.00), with interest thereon from this date until such purchase is completed, by second party, at the rate of eight per cent per annum, simple interest. They covenant and agree to sell and convey, as aforesaid [the Chehalis River timber land] for the sum of Five Hundred Dollars, with interest thereon from this date until such purchase is completed, at the rate of eight per cent per annum simple interest. They covenant and agree to convey, as aforesaid, [the Hoquiam River timber land] for the sum of six thousand six hundred and twenty-four dollars ($6,624), with interest thereon from this date until such purchase shall be completed, at the rate of eight per cent per annum, simple interest. They covenant and agree to sell and convey, as aforesaid, [the Cosmopolis land] for the sum of one hundred and fifty dollars, with interest thereon from this date until such purchase shall be completed at the rate of eight per cent per annum, simple interest.

"In witness whereof, first parties have hereunto set their hands this 13th day of August, 1898.

"James Smith,
"Mary A. Smith."

On August 13, 1898, the last day of the two years named in the agreement, Neeson paid to Smith $580, and received a deed for the Chehalis river timber land. At no time within the two years did he tender any further purchase money, or demand a deed to any other lands. On July 15, 1903, Smith and wife sold to Neeson the Cosmopolis river land for $150, conveying the same by a quitclaim deed, which was prepared by an attorney employed by Neeson and contained the following recital:

"It being an intention hereby to convey to party of the second part all of the right, title and interest in and to said lands, which said parties of the first part acquired from party of the second part by virtue of a certain deed bearing date on or about August 13, 1898, executed by party of the second part to James Smith, and this deed being made pursuant to a contract of even date with said deed and of record in the office of the auditor of Chehalis county."

Neeson claims that this language constitutes a recognition of the continuance of his rights under the written agreement. The defendant Smith alleged and testified that these words were fraudulently inserted in the deed at the instance of Neeson; that the deed was not read to him, and that he would not have executed it had he known that it contained such recitals.

In December, 1900, about four months after the expiration of the time mentioned in the agreement, Smith and wife sold the Hoquiam river timber lands to the defendant Lytle Logging & Mercantile Company for $5,000, which they allege was its then reasonable value. Neeson learned of this sale shortly after it was made, but took no action to assert any further rights under the contract until the time hereinafter mentioned. Shortly after the expiration of the two years, Smith, to the knowledge of Neeson and without objection from him, made improvements to the value of three or four thousand dollars on the Montesano lots. About October 20, 1905, Neeson for the first time tendered payment to Smith, and demanded deeds for the Hoquiam River timber lands and the

Montesano lots. Smith refused to convey, contending that Neeson had no further interest, and on August 11, 1906, only two days less than a period of eight years after the date of the contract, Neeson commenced this action to compel specific performance and recover damages. Other facts not material to be here stated were pleaded and proven. The trial court made no formal findings of fact, but filed the following written opinion:

"In this case I hold that the deed made by Neeson to Smith was an absolute conveyance of the lands described therein in satisfaction and payment of the indebtedness due from Neeson to Smith, and the agreement executed by Smith and wife to Neeson was simply an option given to Neeson under which he could purchase the different tracts described therein on the conditions specified, and when the option expired he lost all rights under it. The option expired absolutely in the two years from its date. The conveyance by quitclaim of the tract which Smith afterwards made to Neeson was a mere matter of grace on the part of Smith and could not have been enforced. Smith did not thereby recognize, and had no intention of recognizing that Neeson had any right to demand such conveyance under his option."

From a judgment in favor of the defendants, the plaintiff has appealed.

The appellant's first contention is that, after August 13, 1898, the relation of mortgagor and mortgagee continued between him and the respondent Smith; that such relation still continues, and that he is entitled to redeem. In deciding whether any deed or other written instruments constitute an equitable mortgage, the principal test is whether the relation of debtor and creditor between the parties has continued after their execution and delivery. *Plummer v. Ilse*, 41 Wash. 5, 82 Pac. 1009. At the time the contract above mentioned was executed by Smith and wife, Neeson conveyed the lands to Smith by warranty deed; whereupon Smith surrendered all the notes, cancelled the mortgages, dismissed the foreclosure actions, took possession of the realty, and has since paid all taxes upon the land. This discharged Neeson's indebtedness,

and no new indebtedness against him was created. Under these facts, the relation of mortgagor and mortgagee ceased to exist, and Smith acquired an absolute title to the land. *Reed v. Parker*, 33 Wash. 107, 74 Pac. 61; *Dabney v. Smith*, 38 Wash. 40, 80 Pac. 199.

Appellant further contends that the contract of August 13, 1898, acknowledged by Smith and wife in October, 1898, if not a mortgage, was a contract of sale, and that as it did not expressly provide that time was of its essence, his rights as a purchaser would continue thereunder until a forfeiture was claimed and enforced by Smith; that no forfeiture has been declared; that the respondent Smith is in no position to claim the agreement was an option, as he himself frequently referred to it in his answer as a conditional sale contract.

It is utterly immaterial that the respondent so alluded to the contract, as he alleged facts sufficient to show that it was only an option. The honorable trial judge arrived at the correct conclusion in holding that it was an option, and that appellant's right to tender payment and demand a deed expired on August 13, 1900. While it is true that the agreement obligated the respondents Smith and wife to sell to the appellant any or all of the lands within a period of two years, it will also be noted that the appellant was not required to take any of such lands, although he might at his option do so, at the prices stated and within the period named. To this extent the contract was unilateral. An obligation whereby one party, for a valuable consideration, binds himself to sell at a fixed price within a certain time, but makes it discretionary with the other party to purchase, being a contract by which the vendor stipulates that the proposed vendee shall have the right to buy at such fixed price and within such certain time or not, at his election, is in law an option. 6 Current Law, 1784; *Lawrence v. Pederson*, 34 Wash. 1, 74 Pac. 1011; *Black v. Maddox*, 104 Ga. 157, 30 S. E. 723; *Ide v. Leiser*, 10 Mont. 5, 24 Pac. 695, 24 Am. St. 17.

There is a marked distinction between a contract of sale and an agreement for an option. This distinction is well stated in *McMillan v. Philadelphia Co.*, 159 Pa. St. 142, 28 Atl. 220, in the following language:

"The distinction between an option and a contract of sale or lease is broad and plain. An option is an unaccepted offer. It states the terms and conditions on which the owner is willing to sell or lease his land, if the holder elects to accept them within the time limited. If the holder does so elect he must give notice to the other party, and the accepted offer thereupon becomes a valid and binding contract. If an acceptance is not made within the time fixed the owner is no longer bound by his offer and the option is at an end. A contract of sale or lease fixes definitely the relative rights and obligations of both parties at the time of its execution. The offer and the acceptance are concurrent, since the minds of the contracting parties meet in the terms of the agreement."

The agreement involved in this action being a contract for an option, the appellant had no rights thereunder after the expiration of the two years, unless he had, within that time, elected to take the property, had tendered the purchase money, and had demanded a deed, which it is not contended he did. The authorities generally hold that time is material in a contract for an option, and that it is not necessary to expressly stipulate that it shall be of its essence. Mr. Pomeroy, in § 807, vol. 6, of his late work on Equity Jurisprudence, says:

"It has at times been suggested that relief for slight failure where there was substantial compliance should be applied to options to purchase land, as where the holder of the option was a day late in exercising the option. But it is clear the rule followed generally by equity is the true one,—that there can be no relief against a failure to exercise an option after the day named for its expiration, for an option is no more than an offer to sell which the offerer is bound to keep open during the time set, but which expires with that time, leaving nothing for equity to operate upon. The courts very frequently refuse to give specific performance of an option sought to be exercised after the time has expired on the

ground of time being of the essence. Strictly speaking, there
is no contract if the election is not made before the expiration
of the time, and equity finding no contract to use its discre-
tion upon, cannot be concerned with the element of time, which
presupposes an existing contract."

See, also, 2 Page, Contracts, § 1166; *Waterman v. Banks*,
144 U. S. 394, 12 Sup. Ct. 646, 36 L. Ed. 480; *Rane-
lagh v. Melton*, 2 Drewry & Smale, 278; *Stembridge v. Stem-
bridge's Adm'r.*, 87 Ky. 91, 7 S. W. 611; *Woods v. McGraw*,
127 Fed. 914; *Potts v. Whitehead*, 20 N. J. Eq. 55.

It is not contended that the appellant, at any time within
the two years, tendered the purchase money, or demanded a
deed either for the Hoquiam river lands or for the Montesano
lots now involved in this action. This being true, all of his
right to become a purchaser of such property ceased by lapse
of time on August 13, 1900, and he is not entitled to now
demand a specific performance, or damages for any alleged
failure of the respondents to convey. Were we to conclude
that the agreement under consideration was not an option,
but a contract of sale in which time was not of the essence,
even then the appellant could not recover. His own evidence
shows that he had knowledge of the sale of the Hoquiam river
timber land to the Lytle Logging and Mercantile Company
almost immediately after it was made, and that he asserted no
further claim to the land for about five years thereafter. This
sale made by respondents constituted a forfeiture of the con-
tract on their part, in which forfeiture the appellant, by his
subsequent conduct, acquiesced. *Moran & Co. v. Palmer*, 36
Wash. 684, 79 Pac. 476.

The respondents have pleaded, and by their evidence clearly
sustained, the equitable defense of laches; but in view of what
we have heretofore said, it will not be necessary to discuss
such defense.

The judgment is affirmed.

Hadley, C. J., Dunbar, Mount, Rudkin, Fullerton,
and Root, JJ., concur.