## MERCER v. McMURRY. (No. 8435.)

(Court of Civil Appeals of Texas. Dallas. March 26, 1921.)

1. **Mortgages ☞37(2) — Deed may be shown by parol to be mortgage.**

An instrument in form a deed may be shown by parol to be in fact a mortgage as between the parties.

2. **Mortgages ☞32(5) — For instrument in form a deed to be a mortgage a continuing debt necessary.**

That an instrument in form a deed may be considered a mortgage, a debt from grantor to grantee, created before or at the time of the execution of the instrument, must have continued.

3. **Evidence ☞179(2) — Defendant not producing deed on notice, plaintiff may testify to contents.**

Plaintiff may testify to the contents of his deed to defendant, claimed to be a mortgage; it not being in plaintiff's possession but having been left with defendant, who, though given notice to produce it at the trial, failed to do so.

4. **Tender ☞13(1)—Counting out and tendering exact amount unnecessary in view of refusal.**

Defendant when money was offered him having stated he would not accept, it was unnecessary as useless to produce, count out, and tender the exact amount.

5. **Appeal and error ☞742(1) — Assignment must be followed by statement showing there was error.**

An assignment of error must under rule for briefing be followed by statement from which it can be determined whether any error was committed.

6. **Appeal and error ☞959(3)—Pleading ☞236(2)—Permitting amendment after call for trial discretionary.**

Permitting filing of amended pleadings on the day the case is called for trial, or even after announcement of ready, is in the discretion of the trial court, and such action will not be disturbed on appeal in the absence of a clear abuse of such discretion.

7. **Appeal and error ☞736—Assignment must not contain distinct and unrelated propositions of law.**

An assignment of error objected to because containing several distinct and unrelated propositions of law cannot be considered.

Appeal from District Court, Rockwall County; Joel R. Bond, Judge.

Action by Mrs. S. H. McMurry against Fred Mercer. Judgment for plaintiff, and defendant appeals. Affirmed.

T. B. Ridgell, of Rockwall, for appellant.
A. H. Mount, of Dallas, for appellee.

TALBOT, J. This suit was instituted by the appellee against the appellant to have a certain deed of date May 22, 1914, construed to be a mortgage to secure the payment of a loan of $300, made on said date by the appellant to appellee.

The appellee alleged, in substance, that she borrowed $300 from the appellant on May 22, 1914, and that at said time, as security for the payment thereof with interest payable five years after date, she executed a deed to the appellant conveying a one-half interest in a 40-acre tract of land of the value of $150 per acre; that while said conveyance upon its face is in terms an absolute deed, yet in truth and in fact the same, by the agreement of the parties at the time of the execution and delivery thereof, was and is a mortgage to secure the payment of the said loan of $300 and interest; that said deed was executed and delivered to appellant upon the mutual agreement that it should become null and void and be canceled upon the payment by appellee to appellant of the said sum of $300 and the additional sum of $225; that long before the maturity of said debt the plaintiff tendered to the defendant the amount stipulated in the contract and asked for a reconveyance of the land and cancellation of the lien; and that, after deferring the matter upon repeated demands, the defendant refused to reconvey the land and cancel the lien or to accept the payment of the debt, and then on or about the 1st day of January, 1919, claimed that he had purchased the land from plaintiff and that she had delivered to him absolute title thereto for the sum of $300. The appellee further alleged that $300 is all she received from the appellant and that that amount is all she owes him; that the charge of $225 interest on the $300 for a period of five years was and is usurious and prohibited by the law of this state, and that since appellee has been forced to institute this suit to regain the title to her property, she now claims the right allowed her by law to repudiate the

entire amount of usurious interest. The prayer of the petition is that the deed in question be construed to be a mortgage; that it be canceled upon payment of the amount owing by the appellee to appellant to the clerk of the court; and that she be quieted in her title and possession of the premises, for costs of suit, and general relief. The appellant answered by general demurrer and special exceptions, as well as a plea of not guilty and general denial. The appellant specially answered that he bought the premises in good faith; that he obtained his deed and is owner of the same, and under no circumstances is appellee entitled to recover. The cause was tried before a jury, and, upon peremptory instruction of the court, the jury returned a verdict in favor of plaintiff. The appellant's motion for a new trial having been overruled, he perfected an appeal to this court.

[1, 2] The first and second assignments of error assert, respectively, that the court erred in overruling the defendant's general and special demurrers to the plaintiff's petition. The propositions urged are: (1) That the deed being absolute upon its face, the appellee under the allegations will not be permitted to contradict the written instrument; (2) that "allegations of appellee's petition that she had a verbal agreement to redeem the land in five years by the payment of $525 is not such a contract as is enforceable in law." This assignment must be overruled. That an instrument in the form of a deed may be shown by parol evidence to be in fact a mortgage as between the parties is well established by the decisions of this state. Gray v. Shelby, 83 Tex. 405, 18 S. W. 809; Hawkins v. Willard, 38 S. W. 365; Loving v. Milliken, 59 Tex. 423; Lapowski v. Smith, 1 Tex. Civ. App. 391, 20 S. W. 957; Hall v. Jennings, 104 S. W. 489. In the case of Loving v. Milliken, supra, it is held that in determining whether a deed, absolute on its face, shall be construed as a mortgage, equity will look to all the circumstances preceding and attending its execution, and sometimes to those which occur afterwards. If there was a debt due from the grantor, and a loan made which the deed was intended to secure, the deed will be deemed but a mortgage, no matter how the transaction is disguised, and this though no written evidence of the debt be made or preserved. Gibbs v. Penny, 43 Tex. 560. In Hall v. Jennings, supra, this court said that whether any particular transaction amounts to a mortgage or to a sale with a contract of repurchase must largely depend upon its own special circumstances, and ordinarily the test is the existence of a debt. The following was also quoted in that case from Mr. Pomeroy:

"The criterion is the continued existence of a debt or liability between the parties, so that the conveyance is in reality intended as a se-curity ·for the debt or indemnity against the liability. If there is an indebtedness or liability between the parties, either a debt existing prior to the conveyance, or a debt arising from a loan made at the time of the conveyance, or from· any other cause, and this debt is still left subsisting, not being discharged or satisfied by the conveyance, but the grantor is regarded as still owing and bound to pay it at some future time, so that the payment stipulated for in the agreement to reconvey is in reality the payment of this existing debt, then the whole transaction amounts to a mortgage, whatever language the parties may have used, and whatever stipulations they may have inserted in the instruments. On the contrary, if no such relation whatsoever of debtor and creditor is left subsisting, then the transaction is not a mortgage, but a mere sale and contract of repurchase."

It is further said in the above case that—

"Where the writings consist simply of absolute conveyances and of a naked written or oral agreement to reconvey, extrinsic parol evidence is admissible to show the real situation of the parties, the existence of a debt, their intention to secure the payment of that debt, and the actual character of the instruments as constituting a mortgage between the original parties."

The appellee's petition alleged the existence of a debt and the agreement of the appellant and appellee that the deed should be given the effect of a mortgage, and the uncontradicted evidence sustains the allegations in the petition.

[3] The fifth assignment of error is that the court erred in permitting the plaintiff to testify to the contents of the deed, because the deed was the best evidence; and in addition thereto the sixth assignment asserts that the admission of said testimony was error, "because the same contradicted the written instrument." The court did not err in admitting the testimony for any reason urged by the appellant, either in the assignments mentioned or any other assignment relating to the matter. The deed was not produced and offered in evidence, but it appears without dispute that it was not in the possession of the appellee, but had been left with the appellant and notice given him to produce it on the trial of the case, which, it seems, he failed to do. The evidence objected to was clearly admissible under the circumstances, and under the findings, to show the purpose of the deed.

Mrs. S. H. McMurry testified that the land described in her petition was the same land described in the deed to Fred Mercer; that one half of the 40 acres belonged to her and the other half to her children; that on May 22, 1914, she got $300 from Fred Mercer and agreed to pay him at the end of five years the sum of $525; that one of her boys got in trouble at Fort Worth and she had to raise some money for lawyer fees

and went to Mr. Mercer to borrow money, and he asked her to secure it; that in all she received $300; that A. H. Mount fixed up the papers between herself and Mercer in the rear end of Mercer's store in Royse City; that she signed a deed and thought it was a mortgage; that there was another instrument, a sort of contract, signed at the same time; that she did not take any of the papers away from the store that day. She stated: That when she went to leave the store "Mr. Mercer walked to the door with her and said, 'Now you get $300 and pay me back $525.' I said, 'I may not want it that long.' He said, 'If you want to pay it between now and then, you pay $525, or if you have the money, loan it out on interest until the five years are out.' Mr. Mercer positively made that statement to me." That about three years after she borrowed the money, and then again in about a year she mentioned the matter of settlement to Mr. Mercer, and he said the money was not due. That again on the 1st of January she sent the money, $525, to Mr. Mercer, and that Mr. Mercer would not accept it. She further stated on cross-examination that she was to have possession of the land and retain the rents during this five years, and that the paper which was executed at the time the deed was, recited that she was to redeem the land within five years; that the land at that time was worth $150 per acre.

Barton McMurry, a witness for appellee, testified that his mother sent him to Mr. Mercer about giving lien one some land for some money to pay an attorney's fee for his brother Clarence; that she wanted $300; that his mother got part of the money, and witness afterward at different times got part of the money.

Sam McMurry, witness for the appellee, testified that he had a conversation with Mr. Mercer about this matter the first part of the year at the time his mother sent him with the $525 in money to pay her indebtedness to Mr. Mercer; that he offered Mr. Mercer the $525, and Mr. Mercer would not take it and asked that the settlement be delayed until his brother Barton McMurry came home from the army; that he later on had a conversation with Mr. Mercer, and in this latter conversation Mr. Mercer then claimed for the first time that he had absolute deed and title to this land. The witness relates that he talked to Mr. Mercer about the suit, and Mercer stated:

"'Wait until I do something. Don't do anything until I do something, and that will give you a better chance in court. I will be the plaintiff and you will be the defendant, and you will have a better chance in court.' I asked him, 'Do you want to wait until my mother dies and step up here and take the land?' and he said, 'No, I would not do that,' and I said, 'You surely do not mean to up and give her the

$525?' and he said, 'No,' he did not think he would. That was about all that was said."

The only evidence offered by plaintiff concerning the contents of the deed was the statement made by appellee that the land described in the deed to appellant was the same land described in the petition. The petition described the land as a one-half undivided interest in 40 acres, describing it by metes and bounds. This merely identified the land in controversy and is acknowledged as being the same land in defendant's answer. The only testimony with reference to the contents of either the deed or the other written instrument was brought out on cross-examination by appellant, in which appellee testified:

"Yes, I agreed to fix up the deed, and I was to have possession and rent for five years, and then I was to redeem it. It was in the paper that I was to redeem it. Yes, I delivered Mr. Mercer the deed the day he paid me the $100. Mr. Mount took my acknowledgment and read the deed over to me. I thought it was a mortgage, and have thought all the time it was a mortgage. Mr. Mount read it over to me, but I did not know how a mortgage should read. Yes, the deed provided that I was to have the rents for five years. I knew Mr. Mount was called to write an instrument, but I did not know it was a deed. I thought it was a mortgage he was writing. Yes, they drew up a little contract on the side, but I did not get that. I reckon that was the contract that said I had a right to redeem the land in five years. That was the agreement, and he was to make a deed back to me."

Neither of the other witnesses testified as to the contents of the written instruments which evidenced the transaction.

This disposes adversely to the contention of the appellant of all of his assignments of error from the fifth to the thirteenth, inclusive, and each and all of them will be overruled.

[4] The tender of the $525 seems to have been sufficient. The defendant, when the money was offered, stated he would not accept it, and to have produced, counted out, and tendered the exact amount thereof would have been useless.

[5, 6] The appellee objects to a consideration of assignment of error No. 3, because the same is not followed by any statement from which it can be determined whether any error was committed, and she objects to a consideration of assignment No. 4, because the same is insufficient to state or show any error committed. The objections are well taken, and are sustained. But the assignments relate to the action of the court in allowing and refusing to strike out the appellee's amended petition on which the case was tried, and if we were disposed to consider them, notwithstanding their insufficiency under the rule for briefing, we are

not prepared to say there was reversible error in the court's ruling. It is well understood that it is within the discretion of the trial court to permit the filing of amended pleadings on the day the case is called for trial or even after an announcement of ready, and that such action will not be disturbed on appeal unless there has been a clear abuse of that discretion. No such abuse of the court's discretion appears here, nor does it appear that the appellant has sustained any injury thereby.

[7] The appellee objects to a consideration of the appellant's assignment No. 14, because it contains seven distinct and unrelated propositions of law. This is a correct criticism of the assignment, and because of its violation of the rule in the respect mentioned it cannot be considered.

Appellee also objects to a consideration of appellant's assignments of error numbered 15 to 20, inclusive, because said assignments are grouped and treated together and relate to as many several and distinct propositions of law and are not followed by appropriate propositions or statements of facts; "and because neither of said assignments distinctly points out, in an intelligible manner, the error sought to be complained of; and because the statement subjoined is a mixture of facts and argument without reference whatever to the statement of facts or the transcript." The several assignments are clearly insufficient and in violation of the rules, and we would not be warranted to consider either of them, over the objections urged by the appellee. If, however, the objections could be waived, a bare reading of them impresses us with the view that neither of them points out reversible error. However, practically every question sought to be raised by the assignments not considered have been passed on by what we have said in discussing other assignments.

The controlling question in the case has been discussed and decided in our treatment of and disposition of the first, second, and fifth assignments of error.

The judgment is affirmed.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes