## McMURRY et al. v. MERCER.
### No. 11464.

Court of Civil Appeals of Texas. Dallas.
June 2, 1934.

Rehearing Denied July 6, 1934.

Mike Reinhardt, of Royse City, and A. H. Mount, of Dallas, for appellants.

Clark, Harrell & Clark, of Greenville, for appellee.

LOONEY, Justice.

Sam McMurry, Clarence McMurry, and Barton McMurry, three of the eight surviving children and heirs at law of S. H. McMurry (who died in 1912) and Mrs. S. H. McMurry (who died May 16, 1932), filed separate suits, in form trespass to try title, against Fred Mercer, each seeking recovery of a one-sixteenth undivided interest in 263.8 acres of land located in Rockwall county, owned by Mr. and Mrs. S. H. McMurry at the time of the death of S. H. McMurry, used and occupied by Mrs. McMurry until the date of her death.

Defendant Mercer answered by general denial, plea of not guilty, and, in a cross-action, brought in the other five McMurry heirs, alleging the undivided interest in the land that he owned, the interest therein owned by each of the heirs, and sought partition. Thereafter, by amendments, plaintiffs changed the nature of their suits to actions for the cancellation of certain deeds, absolute in form, alleged to have been executed as mortgages to secure the payment of debts due Mercer. These actions being consolidated, the original plaintiffs and the other McMurry heirs, answering the cross-action of Mercer, denied that he owned any interest in the lands, therefore was not entitled to have the same partitioned; that his claim to 20 acres of the land is based upon a deed absolute in form, executed by Mrs. S. H. McMurry (from whom the Mercer heirs inherited), adjudged by the district court of Rockwall county to be a mortgage given to secure an indebtedness of $300 (reference being made to the report of the case of Mercer v. McMurry [Tex. Civ. App.] 229 S. W. 699); and that said debt and lien, as established by said judgment, were barred by the statutes of limitation, praying that Mercer take nothing by his cross-action, etc.

In a supplemental answer, Mercer denied these allegations, and specially answering said that the judgment referred to (in Mercer v. McMurry, supra) was conditional, in.

that, it provided that only upon payment of $300 by Mrs. McMurry should title to the 20 acres of land vest in her, and as she failed to make the payment, his title became absolute; further answering, Mercer alleged that, if mistaken as to the status of the title, nevertheless he had a valid and subsisting lien on the 20 acres to secure the payment of his claim of $300, and interest, from the date of the judgment (October 28, 1919), praying judgment for debt and foreclosure of the lien. Answering the plea of limitation, Mercer alleged that his claim was not barred, nor had the statute begun to run, in that, the heirs of Mrs. McMurry are not entitled to the land until his claim is paid, even though it should be held that said judgment is not conditional.

In this status of the pleadings, the consolidated cause was tried to a jury and, in answer to submitted issues, they found that the deeds executed by Sam, Barton, and Clarence McMurry, each conveying to Mercer an undivided one-sixteenth interest in the lands, were intended, by all parties, as mortgages; that is, as security for debts.

Plaintiffs moved for judgment in accordance with the verdict of the jury, and defendant moved for judgment, non obstante veredicto, contending that, under the law and undisputed facts, he was entitled to recover the undivided interest in the land, as set out in his cross-action. The court formally denied each motion, but proceeded to enter judgment in favor of Sam McMurry, canceling his deed to Mercer, conditioned upon payment of $300 into court for the benefit of Mercer, within 20 days; also rendered judgment in favor of the McMurry heirs, jointly for the recovery of the 20 acres undivided interest involved in Mercer v. McMurry (Tex. Civ. App.) 229 S. W. 699, conditioned upon payment of $300 into court within 20 days, for the benefit of Mercer; further adjudging that plaintiffs Barton McMurry and Clarence McMurry take nothing, to which all parties excepted and gave notice of appeal; appeal being perfected by plaintiffs, and defendant having filed cross-assignments of error, the contention of each party is properly presented for consideration.

The deeds sought to be converted into mortgages are absolute in form. The one executed by Clarence McMurry, dated January 13, 1913, recites the following consideration: "$704 cash in hand paid, the receipt of which is hereby acknowledged; and $100 to be made in deferred payments as follows: $35 on January 1, 1915; $35 on January 1, 1916; and $30 on January 1, 1917, as evi-

denced by three notes executed by Fred Mercer, payable to Clarence McMurry, with ten per cent interest from date." The deed executed by Sam McMurry, dated November 20, 1913, recites the following consideration: "$400 cash in hand paid, the receipt of which is hereby acknowledged, and $200 to be made in deferred payments as follows: Note No. 1 for $100, due Jan. 15, 1915; Note No. 2 for $100 due Jan. 15, 1916; with 8% interest from Jan. 1, 1914, and the vendor's lien is hereby retained in favor of the said Sam McMurry, or order, against the hereinafter described land, until the said notes are fully paid, when this deed shall become absolute." The deed executed by Barton McMurry, dated July 2, 1915, recites the following consideration: "The sum of $850, to be paid by Fred Mercer as follows: all cash in hand paid, the receipt of which is hereby acknowledged."

At the same time and as a part of each transaction, Mercer obligated himself in writing to reconvey the land, at the option of the grantor, on payment of an agreed sum by a named date. These option agreements are in legal effect the same, varying in dates, names, and amounts. The one in favor of Sam McMurry reads:

"The State of Texas, County of Rockwall
                    "November 20, 1913.

"Be it known: That I, Fred Mercer of the County and State aforesaid, hereby agree to convey to Sam McMurrey of Rockwall County, Texas, a certain 1/16 interest in the S. H. McMurrey land, this day conveyed to me by Sam McMurrey, said land to be conveyed on January 1st, 1916, provided however, that the said Sam McMurrey pays to me ($600.00) six hundred dollars.

"It being understood that the said Sam McMurrey is to use the land for his own use, and is not buying the same for the purpose of selling same to anyone else for a profit or any other consideration.

"Witness our hands in duplicate, this 20th day of November, 1913.

"[Signed]    Fred Mercer
             "Sam McMurry
             "(Facts 40)."

█ Appellants contend that the court erred in not rendering judgment in favor of Barton and Clarence McMurry, insisting that there was substantial evidence in support of the jury findings, to the effect that the deeds were intended as mortgages. Appellee counters with the proposition that the court committed no error in the respect mentioned, in that, the deeds and accompanying option

agreements are plain, unambiguous, conclusive of the contracts between the parties, hence cannot be varied, added to, or contradicted by parol evidence, and, in a cross-assignment, for the same reason, appellee contends that the court erred in failing to render judgment in his favor against Sam McMurry also.

It appears that, in the deeds executed by Clarence McMurry and Sam McMurry, in addition to the cash consideration recited, Mercer executed certain promissory notes, evidencing deferred payments; also that, as part consideration in each instance, Mercer agreed in writing to reconvey the property at the option of the grantor on payment of an agreed price by a named date. The notes executed by Mercer, payable to Clarence and Sam McMurry, representing the unpaid consideration, and the option agreement executed at the same time, obligating Mercer to reconvey on terms specified, constituted parts of the consideration for the conveyances, are contractual in nature, unambiguous in terms, not attributable to either fraud, accident, or mistake, clearly evidencing the intention of the parties, and cannot, in our opinion, be varied, contradicted, or added to by parol evidence.

A similar situation was presented in Mann v. Wright (Tex. Civ. App.) 269 S. W. 222, 224. In disposing of the question, the court used the following language in point: "We think that the instrument in question being in form a deed, and that the consideration named in said deed is contractual, and there being no ambiguity in the instrument or its terms, parol evidence should not have been admitted to vary or explain its terms or the intention of the parties in executing it, but that it was the duty of the trial court to have construed and hence to have instructed a verdict in favor of defendants." The rule was also announced by the Supreme Court, in Kahn v. Kahn, 94 Tex. 114, 119, 58 S. W. 825, 827, as follows: "The evidence admitted does not come within the rule which sometimes permits the true consideration of an instrument to be shown to have been different from that recited. This principle, properly applied, admits the evidence where the consideration has been stated as a fact, but not where the recital is contractual in its nature. East Line & R. R. Co. v. Garrett, 52 Tex. 139; 6 Am. & Eng. Enc. Law, p. 775, and authorities cited.

"The statement in the deed from Kahn to his wife is more than the mere statement of a fact. Under the decisions referred to, its legal effect is to show the character of the right to be created by his deed, and is as much a contractual recital as any in the instrument, and belongs to that class of particular and contractual recitals which, in deeds, estop the parties from denying them." Also see Pridgen et al. v. Furnish et al. (Tex. Civ. App.) 11 S.W.(2d) 844; Id., by the Commission of Appeals, 23 S.W.(2d) 307; Sisk v. Randon (Tex. Civ. App.) 33 S.W.(2d) 1082.

A defeasance, whether oral or written, represents the consideration, or, as the case may be, part of the consideration for a conveyance. See Jones on Evidence (2d Ed.) p. 562, § 446. So, in the instant case, the defeasance having been agreed upon and reduced to writing, there was no occasion to seek the intention of the parties elsewhere. In Loving v. Milliken, 59 Tex. 425, Judge Willie used the following language in point: "In determining whether an instrument is to be construed as an absolute conveyance or a mortgage when there is no defeasance expressly agreed upon, equity looks to all the circumstances preceding and attending the execution of the instrument, and sometimes to those which have subsequently occurred. Ruffier v. Womack, 30 Tex. 344; Colwell v. Woods, 3 Watts [Pa.] 194, [27 Am. Dec. 345]. From these the transaction will take its hue, no matter what coloring the declarations and apparent agreement of the parties have attempted to give it."

To convert a deed absolute in form into a mortgage, it must appear that it was executed to secure the payment of an indebtedness, or the performance of some obligation; so, applying this doctrine to the instant case, to convert either of the deeds under consideration into a mortgage, it must appear that the grantor was indebted to Mercer, to secure which the deed was executed, and that Mercer could have compelled payment by proper proceedings; in other words, the existence of the relation of debtor and creditor is absolutely essential as a basis for the contention that these deeds are mortgages. See Calhoun v. Lumpkin, 60 Tex. 185, 189; Astugueville v. Loustaunau, 61 Tex. 233; McCamant v. Roberts, 80 Tex. 316, 322, 15 S. W. 580, 1054. Does it appear that this relationship existed between the McMurrys and Mercer? Were the McMurrys obligated to pay Mercer any sum? And could he have compelled payment by proper proceedings? Or was it entirely optional with the McMurrys to pay and receive conveyances, or not to do so? The distinction between a contract of sale and an agreement for an option is very clearly drawn

by the Supreme Court of Washington, in Neeson v. Smith, 47 Wash. 386, 92 P. 131, 133, as follows: "There is a marked distinction between a contract of sale and an agreement for an option. This distinction is well stated in McMillan v. Philadelphia Company, 159 Pa. 142, 144, 28 A. 220, in the following language: 'The distinction between an option and a contract of sale or lease is broad and plain. An option is an unaccepted offer. It states the terms and conditions on which the owner is willing to sell or lease his land, if the holder elects to accept them within the time limited. If the holder does so elect, he must give notice to the other party, and the accepted offer thereupon becomes a valid and binding contract. If an acceptance is not made within the time fixed, the owner is no longer bound by his offer, and the option is at an end. A contract of sale or lease fixes definitely the relative rights and obligations of both parties at the time of its execution. The offer and the acceptance are concurrent, since the minds of the contracting parties meet in the terms of the agreement.' The agreement involved in this action being a contract for an option, the appellant had no rights thereunder after the expiration of the two years, unless he had within that time elected to take the property, had tendered the purchase money, and had demanded a deed, which it is not contended he did. The authorities generally hold that time is material in a contract for an option, and that it is not necessary to expressly stipulate that it shall be of its essence."

As it was entirely optional with each grantor to pay the agreed price and receive a reconveyance, or not to do so, Mercer was in no position to compel payment; therefore, under the test stated, the relation of debtor and creditor did not exist; hence, it cannot be said that the deeds are mortgages. In 41 C. J. p. 326, § 87, the doctrine is announced that: "If the agreement for reconveyance expressly recites that the transaction is not intended as a mortgage, this is conclusive. In the absence of such a declaration, the test must be found in the character of the consideration. If it is a debt which the grantor is bound to pay, which the grantee might collect by proper proceedings, and for which the deed of land is to stand as security, the transaction is a mortgage; but if it is entirely optional with the grantor to pay the money and receive a reconveyance, or not to do so, he has not the rights of a mortgagor, but only a privilege of repurchasing the property * * * ." Also see Charles v. Thacker, 167

Ky. 835, 181 S. W. 611; Miracle v. Stone, 190 Ky. 610, 227 S. W. 1011; Gogarn v. Connors, 188 Mich. 161, 153 N. W. 1068; Miller v. Smith, 20 N. D. 96, 126 N. W. 499, 502.

However, if it can be said that, under the circumstances, parol evidence was admissible to convert the deeds and contemporaneously executed option agreements into mortgages, did plaintiffs show (or even raise the issue) by clear, unequivocal, and convincing evidence, leaving no substantial doubt, that the real intention of the parties in executing the written instruments was to secure the payment of debts? This much they were were required to show. The rule is stated in Pomeroy's Equity Jurisprudence (3d Ed.) § 1196, as follows: "If there is no indebtedness, the conveyance cannot be a mortgage. If there is a debt existing, and the conveyance was intended to secure its payment, equity will regard and treat the absolute deed as a mortgage. The presumption, of course, arises that the instrument is what it purports on its face to be, an absolute conveyance of the land. To overcome this presumption and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail." Jones on Evidence (2d Ed.) p. 563, § 447, states the rule: "But although parol evidence is received in such cases to show the real nature of the transaction, the presumption is that the instrument is what it purports to be; and before a deed absolute in form can be shown to be a mortgage, the proof should be clear and convincing. As the rule has often been stated, 'to convert a deed absolute into a mortgage, the evidence should be so clear as to leave no substantial doubt that the real intention of the parties was to execute a mortgage.'" Also see Howard v. Zimpelman (Tex. Sup.) 14 S. W. 59, 61; Gazley v. Herring (Tex. Sup.) 17 S. W. 17; Miller v. Yturria, 69 Tex. 549, 7 S. W. 206.

The only parol evidence bearing upon the issue now under consideration is found in the testimony of the three grantors, substantially as follows: Clarence McMurry testified that he had no agreement with Mercer, other than the deed that was to secure the payment of a loan, and a written agreement, which was lost, providing that "when I paid him back he was to reconvey the land back to me," and that he had five years within which to do this. On cross-examination, being asked, "At the time, was there any other agreement between you and Mr. Mercer, except the deed that had been introduced in evi-

dence here?" Answer: "No, they are to secure the payment of a loan." Following this, he stated that there was an agreement between him and Mercer, substantially the same as the option agreements between Mercer, Barton, and Sam McMurry. It is obvious that the witness is here referring to the option agreement, and his right, on payment of the agreed price within the time specified, to require a reconveyance. The consideration of the deed, detailed by the witness, was payment of a debt to Mercer, the assumption by Mercer of a debt the witness was owing the bank, and the execution by Mercer of three purchase money notes, aggregating $100. No fact or circumstance was stated indicating the existence of a debt, so, when the witness answered, in effect, that the deed was to secure the payment of a loan, it was but the utterance of an unsupported conclusion. Sam McMurry testified, in effect, that he was indebted to Mercer and a Mr. Johnson, that Mercer was threatening suit and wanted a deed to the land, and not having the money with which to pay these debts, "I went ahead and deeded it (the interest in the land) to him and paid him." Asked whether or not he intended to convey absolutely, and what was said by Mercer, leading up to the transaction, witness answered: "It was to be a lien." But, detailing the facts constituting the consideration, witness testified that his debt to Mercer was paid in the transaction; that Mercer settled the debt owing Mr. Johnson, and executed two purchase-money notes; and that when receiving the notes, witness got a $100 credit at the store and $100 in cash. On cross-examination, witness said he dictated the deed, read the same over before signing, was satisfied with it, accepted it in the way it was written, intended to abide by it, and when asked at what time he decided not to abide by the deed, said, "I wasn't able to pay it when it came"; that he didn't have the money and that was the only reason. This testimony, in our opinion, fails to show or even raise an issue, as to the existence, whether or not, of a debt. The statement that, "It (the deed) was to be a lien," is a conclusion wholly unrelated and unjustified by any fact or circumstance in evidence and, in legal effect, is no evidence. Barton McMurry testified that, in executing the deed, dated July 2, 1915, he intended to convey his undivided interest in the 263 acres of land inherited from his father; that later, in 1919, it was discovered that, by mistake, the deed described only one tract of 40 acres, a correction was made, so as to include all the land as originally intended; that, while the deed recited a consideration of $850, he received only $500, and was to pay Mercer $850 within five years; no note was executed, just the two instruments, the deed and the option agreement; being asked, "Just two instruments? These instruments here (the deed and option agreements)? Just yours and Mr. Mercer's agreement?" he answered: "Yes, I suppose so." Asked to "state to the jury what occurred at the time this new instrument (the one correcting the mistake) was executed in 1919," he answered: "Mr. Mercer came to me, and he wanted further security on this loan, and this other deed was written out." On cross-examination, was asked, "Mercer wanted the deed corrected so as to read like it was intended to be at first? You made it in 1915 and another in 1919?" to which he answered "Yes"; was then asked, "The second deed was a correction deed?" to which he answered, "To give him further security"; was then asked, "When did you think of the further security proposition? Wasn't that something you have thought of since you started this litigation?" answered, "No, sir."

This testimony, in our opinion, not only fails to establish a loan from Mercer to the witness, but is insufficient to raise an issue as to its existence. The only intimation of a loan is found in the statement that, "Mr. Mercer came to me and he wanted further security on this loan and this other deed was written out." It is apparent that the quest of Mercer was not further security, but corrected instruments—that is, a deed and option agreement—so as to include all the land, as originally intended. The characterization of the transaction by the witness, as being a loan, is not only not supported by any fact or circumstance in evidence, but is out of harmony with every other fact, written or oral, exhibited by the record and, in effect, is simply an unsupported conclusion. The record fails to disclose that either of these grantors executed a note or any other evidence of an indebtedness to Mercer, and from the date of the execution of the instruments, until after the death of the mother, in 1932 (and only then in connection with the present litigation), did either grantor contend that the relation of debtor and creditor existed between him and Mercer, nor did either pay or offer to pay Mercer any money, nor did Mercer claim or attempt to collect from either an indebtedness. Their conduct, that is, all the parties, during this long period, was in perfect harmony with the purport of the written instruments, and altogether inconsistent with the idea that they were given as mortgages for the security of debts. So, if

the question is assimilated to and tried out as a question of fact, even on that theory, we conclude that the evidence, upon which grantors seek to convert these instruments into mortgages, is insufficient, in that, it is neither clear, unequivocal, nor convincing; on the contrary, we think the evidence clear, unequivocal, convincing, and leaves no substantial doubt that the intention of the parties was just what the instruments purport to be, and further, as indicated by the consistent course of conduct of the parties, in harmony with the purport of the instruments.

So, we hold that the court below did not err in rendering judgment (non obstante veredicto) that Barton McMurry and Clarence McMurry take nothing, and for the same reason we hold that the court did err in not also rendering judgment (non obstante veredicto) that Sam McMurry take nothing by his action.

■ As above shown, Mercer asserted title to the 20 acres undivided interest in the land, involved in the suit of Mercer v. McMurry, supra, as against all the McMurry heirs. This contention is based on the theory that the judgment was conditional, in that, it provided that only upon payment of $300 into court, for the benefit of Mercer, would title to the 20 acres vest in Mrs. McMurry, and that, as she failed to make the payment, his (Mercer's) title became absolute; and, in the alternative, contended that, if mistaken as to the status of the title, as above shown, nevertheless he had a valid and subsisting lien on the 20 acres to secure the payment of his claim of $300 and interest, from date of judgment (October 28, 1919), for which he asked judgment and foreclosure.

In answer to these contentions, plaintiffs alleged, in substance, that Mercer took no title under said judgment, simply a lien to secure payment of the $300 debt, and that his claim, as creditor and lienholder, was barred by limitation. To the plea of limitation, Mercer replied that his claim was not barred nor had the statute become operative, in that, plaintiffs could not assert title to the 20 acres, until payment of the claim, even though the judgment is held to be conditional.

After adjudging the deed from Mrs. McMurry to Mercer to be a mortgage, the judgment proceeds: "It is further ordered, adjudged and decreed by the court that, upon the payment of the $300.00 by the plaintiff to the clerk of this court, for the use and benefit of the defendant, the mortgaged lien in favor of the defendant against said land be thereby in all things fully released and cancelled and plaintiff, Mrs. S. H. McMurry, recover of and from the defendant, Fred Mercer, all the right, title, claim and interest, owned and held and claimed by the defendant, subject to the debt of $300.00, as aforesaid."

We cannot assent to appellee's contention that the transaction was adjudged to be a conditional sale, and that on failure of Mrs. McMurry to pay $300 for the benefit of Mercer, his title became absolute. When the nature of the suit and the judgment, in its entirety, are considered, the conclusion is inescapable that the court held that title to the 20 acres never passed from Mrs. McMurry to Mercer; that he simply had a mortgage to secure the $300 indebtedness; that the judgment simply established the existence and amount of the debt, and the existence of the lien, and provided that payment of the amount due would release the land from the mortgage lien. As this payment was never made, a cause of action arose in favor of Mercer, entitling him to maintain suit for debt and foreclosure; however, he did not assert this cause of action until set up in his first supplemental answer, filed October 31, 1932, more than ten years after the cause of action arose, at which time it was barred by the four-year statute (article 5529, R. S. 1925).

Our conclusions are that there was no error in the judgment in favor of Mercer against Clarence and Barton McMurry, that the court erred in refusing to also render judgment in favor of Mercer against Sam McMurry, that Mercer should take nothing by his cross-action against the McMurry heirs, as to the title to the 20-acre undivided interest, nor as to the debt and lien asserted, and judgment will be entered accordingly.

We therefore hold that Mercer owns title to and is entitled to recover 49.5 acres undivided interest in the 263.8 acres of land from the eight McMurry heirs, being the three-sixteenths of the whole conveyed to him by Sam, Clarence, and Barton McMurry, and is entitled to partition, and to have his interest set off to itself, if on hearing the court below determines that the land is susceptible of partition. As we are unable, in the state of the record, to determine the respective interest of each of the McMurry heirs, the cause will be remanded to the trial court, that the share or interest in the lands of each of the other joint owners (the eight McMurry heirs) may be determined, also whether the land is susceptible of partition, and for such other and further consideration and orders as may be necessary to accomplish a partition of the

land among all joint owners, under the provisions of title 104, R. S. 1925 (article 6082 to and including article 6100). It is further ordered, adjudged, and decreed that the costs of this court and of the court below be taxed two-thirds against appellants and one-third against appellee, but the costs incident to the partition proceedings shall be adjudged and paid by each party to whom a share is allotted, in proportion to the value of such share, as provided in article 6109, R. S. 1925.

The case is affirmed in part, and reversed and rendered in part, but is remanded to the trial court with instructions, for the purpose of accomplishing a partition of the property among the joint owners.