**PERRY et al. v. LONG et al.**

No. 13959.

Court of Civil Appeals of Texas. Dallas.
Feb. 25, 1949.

Rehearing Denied April 22, 1949.

Helen M. Viglini, Dallas, for appellants.

W. J. Durham, Dallas, for appellees.

YOUNG, Justice.

The controversy here involves ownership of church property; the controlling issue centering upon whether a certain warranty deed conveyed absolute title as it appeared to do, or, on the other hand, was intended as a mortgage. Upon a jury trial with findings favorable to defendants on their cross-action, (original plaintiffs having taken a nonsuit) judgment was entered accordingly with result of this appeal.

Omitting formal parts, jury issues and answers were as follows: "(1) Do you find from the evidence that at the time of the execution of the deed from Woodrow Long to Settie Long, and others named in said deed, which is in evidence before you as Cross-Plaintiff's Exhibit No. 13, the parties named in said instrument intended by the execution and delivery of the same that same should constitute a mortgage in fact,

given as security for funds which the members of Martin Spiritualist Temple had paid on said property or on the construction of the building thereon, if any, as the word mortgage has been heretofore explained to you in this charge? Answer: Yes. (2) Find from a preponderance of the evidence the amount of money, if any, the membership of Martin Spiritualist Temple put into the improvements on Lots Eleven (11) and Twelve (12), in Block E/2488, of Alex Camp's Subdivision to the City of Dallas? Answer: $3825.68." In connection with these issues, the court's charge to the jury included the following instructions: "(1) That the instrument executed by Woodrow Long on September 13th, 1945, which was introduced in evidence before you, is, on its face, a conveyance in fee simple, and vests title to the property involved herein in the trustees named in said deed, in trust for the benefit of Martin Spiritualist Temple, unless the parties to said instrument intended same as a mortgage. (2) In this connection you are instructed that a mortgage as distinguished from an absolute deed of conveyance may result from the intention of the parties to the transaction at the time said transaction is consummated that the fee simple title should not pass, but that the deed of conveyance executed and delivered by the grantor was intended by both parties not as an absolute deed of conveyance, but as an instrument the only purpose of which was to create a lien upon the property described therein to secure the grantee and their beneficiaries for money theretofore advanced by such beneficiaries and used by grantor as part payment for the improvements made or to be made thereon. (3) You are further instructed that the burden of proof is upon Settie Long and Thurman Long, as administratrix and administrator, respectively, and individually, to show by a preponderance of the evidence that at the very time Woodrow Long executed and delivered this deed it was intended by Woodrow Long and the persons named in deed in question as trustees to be a mortgage as distinguished from an absolute deed of conveyance."

The trial petition of appellants (second amended original) is not in the transcript but we assume from the judgment and other portions of the record that the litigation was initiated by Lillie B. Perry, Gertrude Webster, Raymond Webster and two others not appealing, as trustees on behalf of Martin Spiritualist Temple and its membership, for title and possession of the property just described; defendants Thurman Long and Settie Long, sued individually and as administrator and administratrix of the estate of Woodrow Long, answering by plea of not guilty, admitting execution of the deed by Woodrow Long (Exhibit 13 in Issue 1) to certain trustees of Martin Spiritualist Temple, but alleging that such deed was in fact a mortgage to secure advancements and contributions made by church members for the construction of a church building on lots described in Issue 2. A plea of intervention was also filed by Pearl Odom, Myrtle Stewart, Winnie Wilson, Ellis Newsome and Settie Long, styling themselves "the duly and legally elected and acting directors of the Martin Spiritualist Temple, a corporation," and, in its behalf, adopting generally the allegations of defendants' cross-action just mentioned and seeking to oust appellants from the same property by way of injunction. During the trial, after original plaintiffs had rested their case, defendants moved for an instructed verdict, and before a ruling of the court thereon, Perry and associates asked for leave to nonsuit, which was granted; the case then going forward on defendants' cross-action answered by plaintiffs' first supplemental petition. The court's judgment, before us for review, thereafter rendered on above jury issues and answers, declared the warranty deed of September 13, 1945, executed by Woodrow Long, to be a mortgage in fact; that Settie and Thurman Long as administrators of the estate of Woodrow Long were owners in fee of the church site and property in question and entitled to possession thereof; that Martin Spiritualist Temple, through its trustees, should recover from Settie and Thurman Long, in their respective capacities, the sum of $3,825.68, being the amount contributed by the membership in construction of the church building located on said Lots 11 and 12, together with $200 paid

on a certain piano. Interveners were denied relief and all relief not specifically granted in the judgment was denied to all parties.

Appellees may be hereafter referred to as cross-plaintiffs and appellants as cross-defendants; and the latter's fourteen points of appeal can be further summarized: (1) Complaining of the trial court's treatment of their amended motion for new trial, in that (a) they were denied the opportunity of presenting same in open court, (b) the court's refusal to exercise a discretion in the matter of overruling it, and (c) said motion was overruled pro forma without hearing or consideration; (2) error in refusing to grant their motion for an instructed verdict; (3) in refusing their request for instructions relative to definition of a deed, a mortgage, and with respect to the quality and amount of proof necessary to affix the character of a mortgage to a deed absolute in form; (4) error in admission of appellees' Exhibit 1, a written instrument; (5) the jury answer to Issue 1 was based on inadmissible and insufficient testimony also against the great weight and preponderance of testimony; (6) the adduced testimony being as susceptible of a finding that the instrument in question was not a mortgage as that it was, the presumption of law that said writing was what it showed on its face to be, a deed, should have prevailed; (7) refusal of the court to grant a new trial for newly discovered evidence.

It is readily apparent that the foregoing litigation is between rival factions of the particular church, their differences becoming acute following the death in January 1946 of Woodrow Long, their pastor or leader.

On February 15, 1944, Long had purchased the two lots on which stood a small building which the church membership appears to have used as a place of meeting, pending accumulation of funds for a permanent structure. The consideration was $800 cash paid by Long and execution of two monthly installment notes, one for $1,250 payable to Dillie B. Madison, and paid off in 1944; the other for $2,750 to Mrs. W. V. Champion, the un-paid balance of which was transferred to Settie Long, appellee and mother of Woodrow Long, after his death. Funds sufficient for starting construction of a building on the lots were raised by the middle of 1945 and contract let, when, on September 13, Woodrow Long executed his warranty deed conveying above property to "Settie Long, Raymond Webster, Winnie Wilson, Pearl Odie (Odom), Ellis Newsome, L. E. Perry, Gertrude Webster, Trustees of the Martin Spiritualist Temple, their successors and assigns" for what was recited as "Ten & no/100 ($10.00) Dollars and other good and valuable consideration," the instrument being filed for record the following day.

Appellees pled at length in their cross-action the facts reflected in Issue 1 of the charge, viz.: "That together with Long's execution of the described deed, there was an agreement between such grantor and grantees, trustees of Martin Spiritualist Temple, that he as owner of the property would proceed to erect a church building thereon, the members contributing whatever amounts they were able to raise in the construction, Long to furnish any necessary balance of funds; that upon completion of the building Long would sell the property to the membership at its face value, giving them credit for all contributions made, and, if they did not choose to purchase, that he would reimburse them in full; in the meanwhile, as security for amounts put into the construction by members, the deed of September 13 was executed by Long and delivered to the named trustees, the latter group acquiescing in the transaction; that appellants were ready, willing and able to perform the agreement, appellants however now having repudiated it, claiming fee simple title under aforesaid deed.

In several points, appellants first complain that the order on the motion for new trial was not signed by the trial judge in open court in the Dallas County Courthouse and that the judge did not there permit her to argue and personally present it. The record discloses that Judge Fillmore, who sat by assignment of the Presiding Judge of the Administrative Judicial

464

District for Judge Thornton in the trial of the case, signed two orders in Wichita Falls and sent them to the clerk of the Forty-fourth District Court; that the attorney for appellants then designated the one entered, dated December 29, 1947; that the order entered recited that the motion for new trial was overruled. It also recited that appellants' "request for presentation and hearing thereof was not granted" and was overruled "without hearing or consideration."

■ It is not necessary for us to pass on the question as to whether or not this order was void, since, and if it was, the motion was overruled by operation of law on the same date, it being the 30th day after the amended motion for new trial was filed. The appeal bond was filed February 11, 1948.

■ In either event, the appeal on the merits is properly before this court and, in addition to giving full consideration to each assignment, we have given to the motion as a whole and especially that part of the motion raising newly discovered evidence, the same consideration and discretion that the trial judge would have given thereto if the matter had been considered by him. In this connection the record further shows that after Judge Fillmore indicated that he would not make the trip to Dallas to hear the motion, Judge Thornton, in whose court the case was pending, was present in said court but was not requested to hear and pass on the motion and exercise his discretion in granting or overruling same. The points, therefore, present no reversible error and are overruled.

■ Appellants next assert error in the overruling of their motion for instructed verdict which, in effect, charges a general insufficiency of evidence to support either of these jury findings. In considering this and similar points it is our familiar duty to view all testimony in light most favorable to the prevailing party.

As bearing on issues 1 and 2 and on behalf of cross-plaintiffs, Ellis Newsome testified that he was one of the church trustees and secretary of building committee, keeping a record of moneys collected and spent from December 1944 until Long's death. From his records, which were in evidence, the amount raised by members and disbursed for building construction inclusive of two payments on the lots and a piano, was $3,825.68; Long furnishing all money for building purposes over and above that amount. Relative to Long's deed of September 13, 1945, he said: "Woodrow Long called a meeting of the trustees and explained to us that he was giving this deed to us as security for what money the Church had raised, put into this building. At the time, the Church didn't own any property and didn't have enough money to build a new church, and he told us that he would issue this deed for us to hold as security for what money had been raised and put into these buildings, and after the building was completed he would sell it to us, and that we would repay him for what he put in it and also the value of the property, because he owned the property, and if we didn't agree to buy it after it was completed he would repay us the money we put in on it. That is as near as I can remember.

"Q. What did the trustees say, if anything? A. Nothing. They said it was all right.

"Q. All right. Now were you acting as a trustee at that time? A. Yes, sir." According to witness, all trustees named in this deed were present at the conference referred to. The testimony just quoted was definitely corroborated by Myrtle Stewart, one of the trustees at the time but not named in the deed, and Pearl Odom. Appellees also placed in evidence the following instrument dated March 4, 1946 and signed by all grantees to the deed of September 13, 1945: "That we, the undersigned and trustees of the Martin Spiritualist Temple of the County of Dallas and State of Texas do hereby claim the following interest and none other in and to that certain tract or parcel of land lying in the County of Dallas and State of Texas described as follows: Lot 11 and 12 in Block E/2488, Alex Camp Subdivision and Addition to the City of Dallas. And (an) equity in the sum of $3,825.68 which the members of said church donated on the construction of said building, the balance

of the construction price thereof being paid by Woodrow Long, deceased, and we claim the further right to purchase lot 11 .by paying the difference between the construction price of said building and .the above amount contributed by said members."

Applicable to the present controversy are the following well settled principles: "To convert absolute deed into mortgage, evidence should be so clear as to leave no substantial doubt that real intention of parties was to execute mortgage." McMurry v. Mercer, Tex.Civ.App., 73 S.W.2d 1087, Syl. 4; "The presumption, of course, arises that the instrument is what it purports on its face to be, an absolute conveyance of the land; to overcome this presumption, and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail." Pomeroy's Equity, 5th Ed. sec. 1196, p. 586. Under the principles above quoted, the foregoing testimony, without more, is obviously sufficient to support the jury issues and verdict. Likewise, we conclude that the court's explanatory instructions fairly and adequately presented the law of the case to .the jury with respect to the principal issues. Appellants argue, however, that the court should have gone further and instructed on presumption of deed in this character of action; that to overcome such presumption the evidence must consist of more than a mere preponderance, in that, in kind and quality, it must also be clear, satisfactory and convincing. The contention is overruled, as the suggested instruction would have constituted a charge on weight of the evidence. Of course it was the court's duty to determine as a matter of law that the facts adduced on behalf of cross-plaintiffs reflected testimony of the described quality; if so, the issue became a matter for the jury's determination under the usual preponderance of evidence. In a like situation, the Commission of Appeals in Knox v. Brown, 16 S.W. 2d 262, 264, had this to say: "While the burden of proof to establish that the instruments in evidence constitute a mortgage given as security for debt was upon the plaintiff in error, and he is required to establish same as such mortgage, with clearness and certainty, *the trial court is not privileged to so instruct the jury,* though there have been cases where the giving of such an instruction under the facts of those cases, was not deemed such an error as to justify the reversal of the judgment." (Emphasis ours.)

Exhibit 1, hereinabove set forth, of date March 4, 1946, admittedly signed by grantees to the previous deed of September 13, was placed in evidence, the objections of cross-defendants thereto being mainly that it was executed subsequent to the principal transaction and if executed by church trustees as such, was not binding on Martin Spiritualist Temple. "In determining whether an instrument is to be construed as an absolute conveyance or a mortgage when there is no defeasance expressly agreed upon, equity looks to all the circumstances preceding and attending the execution of the instrument, *and sometimes to those which have subsequently occurred.*" (Emphasis ours.) 29 Tex.Jur. sec. 14, p. 806. Loving v. Milliken, 59 Tex. 423, 425; Lilly v. Lewis, Tex.Civ.App., 249 S.W. 1095; Mercer v. McMurry, Tex. Civ.App., 229 S.W. 699; Anglin v. Cisco Mortgage Loan Co., 135 Tex. 188, 141 S.W.2d 935. The signers of this quitclaim and the grantors in the earlier deed were identical, rendering Exhibit 1 admissible on intent of the parties at the time the deed was made. Nor can it be contended that the later writing was a mere nudum pactum, ineffective as against the church. Martin Spiritualist Temple was an unincorporated religious association, and, absent evidence to the contrary, was presumably authorized to act through its trustees. Art. 1397, Vernon's Ann.Civ.St.; Queen Ins. Co. v. Keller, Tex.Civ.App., 186 S.W. 359.

Appellants seek a new trial on ground of newly discovered evidence, in the persons of Ella Mae Walker and Richard McDay; and, in this connection, .the facts contained in the affidavits attached to their motion will be taken as true. Un-

doubtedly these affidavits bear upon the jury issues, in statement of amounts and extent of contributions by the membership; that of Richard McDay going further and detailing what Pastor Long had said from the pulpit before affiant left Dallas in May, 1945; Long having stated that the church belonged to its members and he was going to "fix it" so no one could take it from them; later writing affiant that he had done so. The testimony of McDay would constitute new and distinct facts in contrast to evidence merely cumulative in effect; and, assuming as we do the use of diligence in its discovery, would ordinarily present a serious question concerning the right of appellants to a new trial. But the record here is, in a sense, beyond the ordinary. We refer to the quitclaim of March 4, 1946. Although this instrument was discredited by some of the cross-defendants, no issue was raised of its procurement through fraud, accident or mistake. It remains, therefore, as an admission of positive and distinct facts that would limit their recovery to amount of the stated contributions. In the face of such express admission against interest the trial or appellate court would hardly be justified, even by exercise of the most liberal discretion, in the grant of a new trial on basis of the proffered evidence, newly discovered.

All other points, upon careful study and consideration, are severally overruled without further discussion and judgment of the trial court affirmed.

### On Motion for Rehearing.

The statement in original opinion that "Funds sufficient for starting construction of a building on the lots were raised by the middle of 1945 and contract let" is not altogether accurate. According to D. W. Whittaker, builder, he accepted a contract for the proposed construction the latter part of December 1944, receiving $3,000 from Woodrow Long in cash and checks (not knowing what part of that amount represented contribution of members); that he at once cleared the ground for foundation work, but not actually beginning until after issuance of permit from War Production Board on May 7, 1945.

Again, our use of the words "rival factions" may be likewise inaccurate as descriptive of the feeling and sentiment among members of Martin Spiritualist Temple following death of Woodrow Long. It was not until Thurman and Sittie Long (parents of Woodrow Long) had attempted to assert rights as successors of the dead pastor in church affairs, together with claim of title to the lots previously conveyed, did the differences arise; the initial suit being filed on authority and behalf of the membership by the Websters and Lillie B. Perry, claiming gift of the lots from Woodrow Long and ownership of buildings thereon perforce of aforesaid contributions.

Appellants again raise the point of correctness of the trial court's action in admission of the so-called quitclaim deed as evidence. In order to clarify the question it will be necessary to discuss it in more detail than was done in original opinion. The deed to appellants as "Trustees of Martin Spiritualist Temple" by Woodrow Long (now deceased) contains the usual habendum clause reciting: "To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Sittie E. Long, Raymond Webster, Winnie Wilson, Pearl Odie, Ellis Newsome, L. E. Perry and Gertrude Webster, Trustees of the Martin Spiritualist Temple, their successors and assigns forever and I do hereby bind myself, my heirs, executors and administrators, to Warrant and Forever Defend, all and singular the said premises unto the said Sittie E. Long, Raymond Webster, Winnie Wilson, Pearl Odie, Ellis Newsome, L. E. Perry, Gertrude Webster, Trustees of the Martin Spiritualist Temple, their successors, and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof."

The effect of the habendum clause was to invest appellants with power of sale. The rule is stated in 42 Tex.Jur. 715, as follows: " * * * a conveyance in trust with an habendum clause to the designated trustee, his successors or as-

signs (or other similar words) requires the construction that the settlor intended that the trustee should have the power of sale."

Considering the situation of the parties as trustees holding the legal title with power of sale (so far as purchasers were concerned), the appellees were justified in securing the statement from them confirming, as trustees of the church, the extent of their holding of such property as mortgagee; with power to purchase and pay the difference in amount of contributions and cost of property. In other words, at this point a controversy had arisen.

Under art. 7425b—25, subsection E, Vernon's Ann.Civ.Sts., Acts 1943, c. 148, "Powers, Duties and Responsibilities of Trustees," a part of the uniform Trust Act of Texas, reads: "In the absence of contrary or limiting provisions * * * or a subsequent order or decree of a court of competent jurisdiction, the trustee of an express trust is authorized: * * * E. To compromise, contest, arbitrate, or settle any and all claims of or against the trust estate or the trustee as such. To abandon property deemed by the trustee burdensome or valueless."

The trustees, in order to settle that controversy, and perhaps save a lawsuit, were authorized to sign the statement or so-called quitclaim deed. In doing so they acted as principals so far as Woodrow Long (now deceased) and persons now holding under him were concerned.

 Appellants' authorities, with reference to charging such principal with the admissions of an agent, are not applicable, since the trustees are not agents, but principals, charged only with their duties and obligations to the beneficiaries as such, and to whom they are liable for a breach of duty. "The authority and powers of a trustee are those of a principal rather than those of an agent under the rule of equity in the absence of statute, * * *." 54 Am.Jur., p. 230 (Last paragraph, sec. 288).

Arguing inadmissibility of Exhibit 1 (quitclaim), appellants cite Humphries v. Wiley, Tex.Civ.App., 76 S.W.2d 793, where authority of trustees of an unincorporated church to convey realty without knowledge or consent of the congregation was successfully challenged. There, the authority was limited by church regulations in evidence. Here, no such limitation on power of trustees is shown. On the other hand, certain testimony of Lillie B. Perry, a cross-defendant, indicates lodgment of full authority with pastor and trustees; she stating in another connection that "the church was not run by the congregation." Moreover, the immediate matter here involved relates merely to admissibility of evidence on a disputed issue of fact to be decided by the jury. Under the instant record, we think the instrument was admissible both as original evidence and in impeachment of testimony of cross-defendants, at least to the following extent: (1) With respect to their statements on witness stand tending to prove contributions greatly in excess of the amount of $3,825.68 shown by the instrument they had previously signed; (2) their claim as trustees of a debt and not title to the property when executing the purported quitclaim, as opposed to their claim of title and not a debt in the ensuing law suit.

We adhere to our conclusion expressed in original opinion, and appellants' motion for rehearing is overruled.