## WILLIAMS v. YOUNG et al.

### No. 6689.

Court of Civil Appeals of Texas. Texarkana.

April 9, 1953.

Rehearing Denied April 30, 1953.

William McCraw and Richard F. Loomis, Jr., Dallas, for appellant.

Smith & Hall, Marshall, for appellees.

WILLIAMS, Justice.

Grant Williams is the agreed source of title. On June 4, 1948, the day preceding his burial, appellee M. T. Young, a defendant below, a nephew and an heir at law of the deceased, executed and delivered to appellant, Rufus Williams, the plaintiff below, an instrument which purports to convey to plaintiff an undivided 40-acre interest in three adjacent tracts of land, aggregating 130¾ acres, situated in Harrison County. This instrument, forthwith filed for record, recites a consideration of $125 in cash as then paid by plaintiff to M. T. Young. According to its reading, tenor and effect, the instrument is a general warranty deed and purports to convey the fee simple title to an undivided 40-acre interest.

Appellant filed this suit against M. T. Young in January, 1951, in this trespass to try title action alleging the requisites mentioned in Rule 783, Texas Rules of Civil Procedure, with a prayer for title and possession of the 40-acres interest. In subsequent pleadings plaintiff made W. E. Lane, the administrator of the estate of Grant Williams, so appointed in August, 1948, a party defendant along with many others alleged to be heirs of Grant Williams and prayed for partition. This action for partition was later abandoned and plaintiff dismissed as to the other alleged heirs. The suit proceeded to trial against M. T. Young and the administrator, upon the sole question whether or not the instrument had been executed by M. T. Young, as asserted in his answer, under a mutual agreement and intent that it was to be and serve as a mortgage to secure $125 then allegedly advanced by appellant to M. T. Young for the burial expenses of Grant Williams. Appellee Young offered to do equity by a tender into court of the amount to be due. The jury's answer of "Yes" to the only issue submitted sustained this contention of appellee Young. The judgment entered pursuant to above jury finding decreed that "plaintiff recover nothing from defendant"; that "the deed * * * be cancelled and held far naught"; that said instrument "be declared to be a mortgage and not a deed"; and that "subject to the pending administration on the estate, M. T. Young be awarded title and possession of the 40 acre interest."

Above judgment dated August 21, 1952, was entered of record the same day. On September 17, the court overruled appellant's amended motion for a new trial, to which action appellant excepted and gave notice of appeal to the Court of Civil Appeals of the 6th Supreme Judicial District of Texas. His appeal bond was approved and filed on September 17. On September 18, the court vacated and set aside above order overruling the motion for new trial and set the motion down for another hearing for September 20. On the latter date, the court again overruled a motion for new trial and appellant again excepted and gave notice of appeal. On September 26, 1952, the district clerk again approved and filed an appeal bond tendered by appellant.

The order of September 17, which is lengthy, and which sets out various alleged requested instructions by both plaintiff and defendant Young further recites that litigants in a conference with the court prior to submission of his charge to the jury had then and there each waived exceptions and their respective requests for submission of the instructions therein set out in full

in this order overruling the motion for new trial. In this order of September 17, appellant was given leave to file by-standers bills of exception. It appears from the recitals in the order of September 18, that the orignal order refusing the motion for new trial was set aside for the reason therein recited, "in order that all parties may have a full, fair and complete hearing as to whether or not the defendants (evidently intended to be plaintiff) waived their objections and exceptions prior to the time the case was submitted to the jury." Upon an extensive hearing on September 20, the court concluded that appellant had not waived his exceptions and requested instructions and concluded, "Well, I am going to set the judgment aside and grant the motion for a new trial." But in a formal order entered the same day the court overruled the motion for a new trial. Then an instrument dated and filed September 26, styled "Order correcting record" which the court signed and caused to be filed with the record of this case, states that certain requests and exceptions (later herein set out), were timely made by plaintiff, and concludes over the signature of the court, "overruled —Exceptions noted." "It is therefore, ordered, adjudged and decreed by the court that the record in this cause be corrected to reflect the attorney for the plaintiff, duly preserved his exceptions to the court's charge as aforesaid."

Under cross-assignments based on exceptions timely urged to above irregular and confusing procedure, appellee Young insists that after the appeal had been perfected on September 17, the trial court was without further jurisdiction to vacate or to enter the subsequent orders above detailed, and hence the alleged refusal to give the alleged requested instructions involved in the points advanced in his brief are not before this appellate court for review.

■ Without sustaining or overruling these cross-assignments of error as urged by appellee Young, we are of the opinion that the instrument dated September 26, and designated "order correcting record" will serve in effect as a bill of exception. As stated in Holman Bros. v. Cusenbary,

Tex.Civ.App., 225 S.W. 65, 66, "The statement of the judge served all the purposes of a bill of exceptions, because he certifies that he advised with the jury without the knowledge or presence of appellants, and no more could have been accomplished by a regular bill of exceptions, for it is the approval by the trial judge that gives force and effect to a bill of exceptions." See 3A, Tex.Jur. (Appeal and Error) §§ 538 and 646. The appeal bond, whether the one filed September 17, or the one filed on September 26 were both timely filed within thirty days as required under Rule 356, T.R.C.P.; and the transcript and statement of facts were filed in the district clerk's office within fifty days as required under Rule 381, T.R.C.P., and in the Court of Civil Appeals within sixty days as required under Rule 386, T.R.C.P. Whether the order of September 17, or that of September 20 be recognized, this record in all respects was timely filed.

Special issue No. 1, which was answered, "Yes", reads: "Do you find from a preponderance of the evidence that the deed bearing date of June 5th, 1948, from M. T. Young to Rufus Williams was understood and intended by the said M. T. Young and Rufus Williams, at the time of its execution and delivery, to be in fact a mortgage to secure the said Rufus Williams for a loan of One Hundred and Twenty-five ($125.00) Dollars." Applicable to this, the only issue submitted, the court instructed the jury as follows: "The questions asked are usually begun with the phrase 'Do you find from a preponderance of the evidence' that a certain event, act, omission or transaction took place. A 'preponderance of the evidence' is defined in the law as the greater weight and degree of credible testimony."

It appears from the instrument dated September 26, which we have construed to serve as a bill of exception, that plaintiff in connection with his exception to the charge, tendered and requested instructions A, B, and C hereinafter set out and discussed.

## A.

■ "You are instructed that a mortgage, as distinguished from an absolute

deed of conveyance, may result from the intention of the parties to the transaction at the time said transaction is consummated but that both parties at the time said deed of conveyance was executed, must intend the same to be a mortgage, and not a deed upon the property described therein." The refusal to give above, which appellant styles a definition of a mortgage, does not present a reversible error. If intended as a definition it fails to meet the requirements of Rule 279, T.R.C.P., in that it is not "a substantially correct definition". If it be treated as a requested instruction, the same instruction, namely, the requirement of mutual intent that it serve as a mortgage is embodied in the special issue given. To have given this requested instruction would have been to the advantage of appellee Young for it would have emphasized his claim that they had mutually intended for the deed to serve as a mortgage. An instruction modeled after the approved instruction set out in Perry v. Long, Tex.Civ.App., 222 S.W.2d 460, 462 (w/r), cited by appellant might have been appropriate here if framed so as to be applicable to this record, but no such instruction was requested.

## B.

■ "You are further instructed that the burden of proof is upon the party asserting that the deed is a mortgage, to show by a preponderance of the evidence, to-wit: by clear, unequivocal and convincing evidence, that at the time of execution the real intention of the parties was to execute a mortgage, as distinguished from an absolute deed, as hereinabove defined." The refusal to so instruct the jury is sustained. " * * * the suggested instruction would have constituted a charge on weight of the evidence. Of course it was the court's duty to determine as a matter of law that the facts adduced on behalf of cross-plaintiffs reflected testimony of the described quality [as set out in above requested instruction]; if so, the issue became a matter for the jury's determination under the usual preponderance of evidence." Perry v. Long, supra, 222 S.W.2d at page 465.

## C.

"You are instructed that an instrument on its face is a conveyance in fee simple and vests title to the property involved in the grantee; and, the burden of proof is upon the party asserting that an absolute deed was intended as a mortgage by the grantor and grantee at the time of execution and delivery, of the instrument." It is to be noted that the court in his charge defined "preponderance of the evidence" as the greater weight and degree of credible testimony. The submitted issue construed the instrument as a deed, and correctly so according to its reading, tenor and effect. The issue clearly identifies the deed inquired about. The issue as framed clearly placed the burden of proof upon the one attacking the instrument to establish the claim that the parties "understood and intended at the time of its execution and delivery to be in fact a mortgage to secure a loan of $125." No reversible error is shown in refusing to give the requested instruction.

Error is urged to the court's refusal to grant plaintiff's motion, timely presented, for an instructed verdict grounded on the uncontroverted fact that the deed executed and delivered was on its face a deed of conveyance and "that the evidence offered by Young did not meet the burden of proof tending to establish by clear and convincing evidence that the deed was intended as a mortgage." This disputes the implied conclusions of the trial court that the quality of evidence introduced was sufficient as a matter of law to legally warrant the submission of Special Issue No. 1.

The deceased, the appellant Williams, the appellee Young, and all the witnesses except as later herein noted are related to each other. Their testimony bearing on the issue involved is in hopeless conflict. Rambo, the colored undertaker, who received the $125 at the time, is not related to the family. The testimony of the attorney who prepared the deed and the notary who took the acknowledgment, both white, furnished no light as to the intention of the contracting parties. If intended as a loan, the testimony is silent as to the rate of interest, if any, to be paid or when the

alleged loan was to be repaid. Young's testimony corroborated by his witnesses discloses that appellant sought him out and offered to make a loan of $125 and they relate the statements then made that passed between appellant and Young as "Would lend him the money," "would give security," "give a mortgage," "he signed security for the money" and "put up the land for security." Young and some of his witnesses testified about an alleged trip made by appellant and Rambo to collect the $125 some months later at which time according to their testimony, Young "promised to pay him first when he got the money," and as one witness puts it, Young promised to pay him "when some money comes in circulation." All the foregoing was refuted and denied by the testimony of appellant and Rambo, their testimony being that appellant refused to make a loan and reluctantly agreed to buy the interest for $125.

■■■ "It is our familiar duty to view all testimony in light most favorable to the prevailing party." Perry v. Long, supra, 222 S.W.2d at page 464. The application of this rule would sustain the jury's affirmative finding in answer to Special Issue No. 1. The sufficiency of the evidence to support such a finding is interwoven with the quality of evidence necessary to meet the test that it be clear and convincing. "In determining whether a deed absolute in form is a mortgage, the court is not limited to the written memorials of the transaction, but may consider all the surrounding circumstances. * * * such as the relative situation of the parties at the time * * ." 59 C.J.S., Mortgages, § 35, p. 69; "the inadequacy of the price, the financial condition of the grantor. * * * and the subsequent dealings of the parties." 59 C.J.S., Mortgages, § 35, p. 70. When above measures are applied to the facts and circumstances above set out and which follow, together with the reasonable deductions to be made therefrom, we are of the opinion that the court was legally warranted in submitting Special Issue No. 1 to the jury.

Grant Williams was removed from his home to that of his cousin Arabella where he was confined for several months prior to his death. M. T. Young was then in Galveston where he had resided for twenty or more years. After Grant had "ceasted" and in response to a telegram he arrived at the scene on Tuesday following to attend the funeral. The testimony does not disclose what efforts had been made by the large number of kinsmen to provide funds for the burial and why Young was selected to carry the burden alone. It appears that he was approached by appellant with an inquiry about the expenses, which finally resulted in the execution of the deed, prior to Grant's "funeralization." Young moved into Grant's dwelling situated on the land shortly after his death and later when appellant attempted to move the contents out Young resisted with a threat of aid from the justice of the peace. Appellant, a licensed herb doctor, and Rambo, the undertaker, have successfully and profitably followed their respective vocations for years. The record reflects that Young was able to write his name. The county tax receipts disclose rendition of 40 acres in Grant's name in 1948 at $400 so paid by appellant; and renditions for $590 made and paid by appellant in 1949, 1950, 1951 on 61.5 acres. Such assessments for taxes would indicate a much greater market value for the land, and refutes the claim that the interest was sold and logically supports a conclusion of mutual intent to create a lien by the execution of the instrument. It is possible but not probable that grief prompted Young to sell his birthright after an absence of 20 years in order to bury Grant. The literacy and business experience of appellant and the undertaker pitted against the illiteracy and inexperience of Young enter this picture in determining the quality of evidence. The evidence above summarized with the deductions and inferences to be drawn therefrom does not warrant this court to disturb the legal conclusions of the trial court. Knox v. Brown, Tex.Com.App., 16 S.W.2d 262, 263; 36 Am.Jur., p. 765.

In the affirmance of this judgment, this court does not adjudicate the actual acreage interest inherited by Young, nor do we

intend to adjudicate what may have been inherited by Young in any particular tract or survey, nor do we mean to foreclose appellant's right to proceed in a court of competent jurisdiction by suit for his debt with interest, subject to the pending administration.

The judgment is affirmed.