William A. WILBANKS, Appellant,

v.

R. A. WILBANKS et al., Appellees.

No. 6839.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 16, 1959.

Rehearing Denied April 27, 1959.

Burks & O'Connor and Clifford W. Brown, Lubbock, T. D. Sansing, Spearman, for appellant.

Sanders, Scott, Saunders, Brian & Humphrey, Amarillo, Albert Smith and Moore & Moore, Lubbock, James P. Linn, Spearman, for appellees.

CHAPMAN, Justice.

In their First Amended Original Petition, the pleadings on which they went to trial, R. A. Wilbanks, whose given name was Robert, G. C. Wilbanks, whose given name was Gilbert, Blondine Wilbanks, Darwin Wilbanks, and Caroline Wilbanks Tilger, joined by her husband, B. J. Tilger filed suit against William A. Wilbanks, appellant, and F. M. Wilbanks, Jr. alleging that, "On March 13, 1950, and for sometime prior thereto, E. R. Wilbanks had been a mentally incompetent person, not knowing the nature or extent of his property and not being competent to contract or execute deeds or other conveyances." In the alternative they pleaded in substance that when the instrument which furnishes the basis of this law suit was executed by E. R. Wilbanks, grantor, and when it was delivered to William A. Wilbanks, grantee, both the grantor and grantee intended that such instrument should be a mortgage upon the interest therein described to secure the payment to the grantee of an indebtedness owed by G. C. Wilbanks to William A. Wilbanks in the approximate amount of $1,500.

The first two named parties in the paragraph above (two of the appellees herein) and William A. Wilbanks, appellant, were the only surviving children of Eva Mae Wilbanks and E. R. Wilbanks. Blondine Wilbanks was the surviving widow of Fred Wilbanks, deceased, another son of Eva Mae Wilbanks and E. R. Wilbanks, and the other parties named were the children and a son-in-law of Fred Wilbanks, deceased. F. M. Wilbanks, Jr., though sued as a defendant, adopted the pleadings of the plaintiffs and is an appellee herein. William A. Wilbanks, except when his name is used, will be hereinafter referred to as appellant and all other parties, except when their respective names are used, will be referred to as appellees.

On its face, the instrument in controversy sought to deed 480 acres of land in Hansford County to appellant with a reservation by the grantor, E. R. Wilbanks, of "all payments to be made, either as bonus, rental or royalties on said land on the oil, gas, and mineral lease now on said land or any future oil, gas, and mineral leases that may be made on said land." It was agreed by all parties that at the time of the execution of the instrument in controversy all E. R. Wilbanks owned in the land described was an undivided one-half interest in the minerals under the 480 acres, which he and his wife had reserved at the time they sold the property.

The alleged mental incompetence of E. R. Wilbanks at the time of the execution of the instrument in controversy was apparently abandoned and the case was tried alone on the theory that at the time of the execution of the instrument both grantor and grantee intended it as a mortgage upon the interest owned by grantor to secure the payment to the grantee of an indebtedness owed by G. C. Wilbanks to appellant, grantee. The deed being, in form, one of general warranty we believe the decisive question to be considered is whether the evidence adduced was sufficient to show that the deed absolute on its face was intended as a mortgage given by the father, E. R. Wilbanks to one son, appellant, as security for a $1,500 note owed appellant by another son, G. C. Wilbanks. That is the basis on which the suit was tried.

Appellees, by brief, argue that "circumstantial evidence offers more convincing and satisfactory proof than direct evidence." We can vision some types of cases where strong enough circumstances might make circumstantial evidence as satisfactory as direct evidence but to rely only on circumstantial evidence in a case of this nature the circumstances would certainly have to be clear and convincing that the parties to the transaction understood and

intended at the time the instrument was executed and delivered that it was to be a mortgage. Appellees also argue through their brief that appellant's testimony itself constituted direct evidence in favor of their position. To this we cannot agree. Despite any statement made in his deposition or any of his letters he continued to insist in his oral testimony that he paid the $10 consideration shown in the instrument and that his father deeded the property to him to pay the $1,500 note. Additionally, we have been unable in this case, after a most thorough study of the record, to find any direct evidence that the grantor and grantee understood and intended the instrument to be a mortgage at the time of its execution and delivery. So far as we have been able to determine there is not any evidence in the record where the word "mortgage" or "lien", or "security" was ever used in the conversations and transactions between the parties to the instrument concerning its execution and delivery nor any words or terms from which it could be said that a lien was intended. Actually, about all we have are circumstances from which it may be said that neither of the three brothers were completely consistent in their testimony given by deposition with that given orally on the witness stand. Let us then look to the circumstances to determine if they are sufficient to show by a preponderance of the evidence that an absolute deed was intended by the parties to be a mortgage.

One circumstance urged by those taking the position that the deed was not absolute is that the mineral interest purportedly conveyed might have been worth as much as ten times the amount of money appellant spent to get his brother out of the Fort Stockton trouble after the promise by their father that he would see that appellant did not lose anything by doing so. But there is not any evidence that the grantor, a sick and aged 78 year-old man knew anything about the value of the minerals, less his reservation, at the time the instrument was executed. So far as the record is concerned he could have considered them no more valuable than the amount of money appellant spent to get his brother out of trouble. Even in this circumstance there is not anything of probative value to show but what the father intended to convey to appellant an interest worth more than was due him.

Another circumstance urged as proof that the deed was not absolute is that appellant accepted a $300 refrigerator from G. C. Wilbanks as a payment on the $1,500 note. In a question on cross examination as to whether he gave his father the $300 when the refrigerator came, appellant said, "He was living with us and we just used it."

Still another circumstance urged as proof that the deed was intended as a mortgage was that in the deposition taken before the trial appellant testified that $1,450 he paid his father in February, 1951, was part of the consideration for the minerals purportedly transferred by the March 13, 1950 deed. In his oral testimony on both court trials he testified differently, contending in effect that the interest conveyed was his father's way of paying him the $1,500 note.

Another circumstance urged in support of appellee's contention is that appellant on January 19, 1953, wrote G. C. Wilbanks a letter in which he said in part "since dad really paid the money for your note I am returning it to you."

Let us now look to the direct testimony. Frank R. Murray, an attorney at Lubbock, and Referee in Bankruptcy for the United States District Court for the Northern District of Texas prepared the instrument in controversy and took the acknowledgement of E. R. Wilbanks to it. He testified:

"Q. All right, sir, do you recall whether or not there was any conversation between you and E. R. Wilbanks, or any statement made to him about this deed being intended as a mortgage, or anything of that kind? A. No. There was no conversation to that effect.

"Q. Did he at any time make any statement to you that he intended this instrument to be anything further or more than what it appears on its face? A. No.

"Q. Now, Mr. Murray, as an attorney you would know how to prepare a real estate mortgage, would you not? A. That is correct.

"Q. And if you had been requested to draw a mortgage on this occasion, could you and would you have done so? A. Yes.

"Q. Would it have involved any more difficulty than the drawing of the instrument that you drew? A. I wouldn't think so.

"Q. Do you recall whether or not E. R. Wilbanks signed this instrument in your presence? A. Yes, that is right.

"Q. And, of course, did you at that time know the gentleman as E. R. Wilbanks? A. Oh, yes; I knew him. I can visualize him now."

The deed was executed and acknowledged on March 13, 1950, and filed for record in Hansford County the next day. A letter introduced into evidence under date of March 24, 1951, showed that appellant, by that letter, advised one of his brothers, R. A. Wilbanks, that his father had deeded him the minerals. The testimony further shows that the $1,500 note was returned to G. C. Wilbanks after their father's death and that by letters to each brother shortly after their father's death a check in the amount of $182.57 was sent to each of them as their part of their father's estate left after payment of all debts. The notation on the check to Robert said, "In final settlement of the estate of E. R. Wilbanks." The notation on the check to Gilbert said, "One-third interest in remaining bank account of $547.71." Both checks were cashed.

Testimony without dispute in the record shows that through some trades in machinery in 1949, G. C. Wilbanks had been arrested at Fort Stockton in early March, 1950, and had called his brother, appellant, to come get him out of jail. Appellant advised their father about Gilbert's trouble, told him he had been out $700 on him recently in a truck trade Gilbert had become involved in and that he did not care to spend any more money on him. Appellant testified in effect that his father told him if he would go help Gilbert out of his trouble in Fort Stockton he would be responsible for any amount of money that he put out down there and would see that he did not lose anything. He did go get Gilbert out of jail and then took a note from him for $1,500, representing what Gilbert had cost him because "I thought if there was a chance of him paying it dad would not have to pay." He further testified that when he came back his father said, "Well, I'll deed you those minerals."

We have studied carefully all five cases cited by appellees in support of the sufficiency of the evidence to establish the absolute deed as a mortgage. The case of Keller v. Kirby, 34 Tex.Civ.App. 404, 79 S.W. 82 and McLemore v. Bickerstaff, Tex. Civ.App., 179 S.W. 536 each hold that where a deed, absolute in form, was a mortgage at its inception, no subsequent parol agreement of the parties could change its legal character. We find no fault with such holding. In those cases there was not any question but that the deeds at their inception were intended as mortgages.

In Williams v. Young, Tex.Civ.App., 257 S.W.2d 842, 846, there was direct and positive testimony by appellee Young and his witnesses to the effect that "appellant sought him out and offered to make a loan of $125 and they relate the statements then made that passed between appellant and Young as 'Would lend him the money,' 'would give security,' 'give a mortgage,' 'he signed security for the money' and 'put up the land for security.'" Appellant's witnesses testified to the contrary but it made a fact issue for the jury to pass on, which they resolved in favor of Young.

In Smith v. Rozelle, Tex.Civ.App., 282 S.W.2d 122 defendant Rozelle, immediately before the execution of the contested deed, told Edna Smith Watson that he was going to lend his father-in-law money and he had decided he had better secure himself with a deed. The Rozelles later told the same party they advanced about $2,000 to deceased in refinancing the loan on the land. Additionally, they admitted in their pleadings that the purpose of the deed from the father to them was to refinance the note due by the father to John Hancock Life Insurance Company. In the face of all this testimony the trial court dismissed the jury and rendered judgment for Rozelle. The Waco Court properly reversed and remanded the case.

■ The fifth case cited by appellees in support of the sufficiency of the evidence was Bradshaw v. McDonald, 147 Tex. 455, 216 S.W.2d 972. In this case McDonald pleaded and proved that at the time he executed the deed there in controversy he was delinquent in the amount of $181.39 on a Home Owners Loan Corporation note; that Bradshaw and his wife, McDonald's sister, offered and agreed to lend him the amount necessary to satisfy the delinquent payments and any further amounts that might become owing upon the indebtedness to HOLC until such time as he became physically able to repair and rent the house on the premises. In answer to a proper issue submitted the jury found there was an agreement between the parties at the time of the execution of the instrument that the property would be held as security for the money paid by Bradshaw to the HOLC. The court of civil appeals properly held the evidence was sufficient to go to the jury on whether the deed was intended as a mortgage and the Supreme Court agreed. In all these cases cited by appellees where the deeds absolute were held to be mortgages there was direct testimony of the intention of the parties to that effect. We have no such testimony favoring a mortgage in our case. To the contrary, the direct testimony was

to the effect that it was an absolute deed. This is not to say that direct evidence would have to be present in order to show a deed absolute was intended by the parties thereto as a mortgage but in a case of the nature of this one the circumstances would have to establish by a preponderance of the evidence that the grantor, at the time of its execution and delivery, intended it as a mortgage.

■ It is immaterial to a decision of this case whether the consideration expressed in the writing was or was not a mere recital, or was or was not contractual in nature, because the law is settled in Texas that a deed absolute on its face may be shown by parol evidence to have been intended by the parties thereto as a mortgage. Bradshaw v. McDonald, 147 Tex. 455, 216 S.W.2d 972. However, the presumption is that the instrument is what it purports to be, and to convert a deed absolute into a mortgage, the proof should be clear and convincing, McMurry v. Mercer, Tex.Civ.App., 73 S.W.2d 1087, 1090 (writ refused), or "so clear as to leave no substantial doubt that the real intention of the parties was to execute a mortgage," Id., or clear, unequivocal and convincing, Perry v. Long, Tex.Civ.App., 222 S.W.2d 460 (writ refused). Believing that all the testimony offered favorable to appellees did not meet this quality of proof by a preponderance of the evidence, we are of the opinion that the trial court should have granted appellant's Motion for Instructed Verdict. Numerous other points of error have been raised by appellant but because of our view of the case and the disposition thereof they have become immaterial and require no treatment in this opinion. Accordingly, the judgment of the trial court is reversed and remanded for another trial.

### On Motions for Rehearing.

Both appellant and appellees have filed their motions for rehearing. A further study of the record reveals the fact that this case has been tried twice. The record before us indicates it was hotly contested

with all parties represented by able lawyers. There is no reason to believe that the evidence upon a third trial would be substantially different. We therefore withdraw the last sentence in the opinion of February 16, 1959, and substitute therefor the following: Accordingly, the judgment of the trial court is reversed and rendered.